[No. B183184. Second Dist., Div. One. June 29, 2006.]

JAY FIRESTONE, Plaintiff and Respondent, v.
PETER HOFFMAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I.B–I.D, II., and III. of the Discussion.

### COUNSEL

Peter Hoffman, in pro. per.; Gipson Hoffman & Pancione, Kenneth I. Sidle and Corey J. Spivey for Defendant and Appellant.

Lord, Bissell & Brook, Keith G. Wileman; Silver & Freedman and Jeffrey S. Kravitz for Plaintiff and Respondent.

### OPINION

**ROTHSCHILD, J.**—In 1997, Peter Hoffman borrowed $375,000 from Jay Firestone, and drafted and executed a promissory note for the amount of the loan. Firestone sued Hoffman on the note, alleging that the loan was never repaid. At trial, Firestone persuaded the court to exclude nearly all of the evidence that Hoffman sought to introduce in his defense, and the jury returned a verdict for Firestone. In the published portion of our opinion, we hold that Firestone's Canadian tax returns are relevant and not privileged, and that the trial court abused its discretion when it concluded to the contrary. In the unpublished portion of our opinion, we conclude that this evidentiary error and others were sufficiently prejudicial to warrant reversal.

## BACKGROUND

### I. Firestone's Claim and Hoffman's Defenses

Hoffman borrowed $375,000 from Firestone and memorialized the loan in a promissory note (the Note) that Hoffman drafted himself and executed on June 6, 1997. The Note provides that "[t]he outstanding principal balance shall bear interest at the rate of Seven and one-half percent (7.5%) per

annum . . . . All principal and interest shall be due and payable on the 31st day of July, 1997." The Note also provides that "[a]ll principal and interest not paid when due shall bear interest from such date until paid in full at a rate equal to the Federal short-term rate determined pursuant to section 1274(d) of the Internal Revenue Code of 1986 . . . ." In addition, the Note provides that "[a]ny extensions of time granted to the undersigned shall not release the undersigned nor constitute a waiver of the rights of the holder of this Note." And the Note includes the following attorneys' fees provision: "In the event the holder of this Note incurs any loss, cost, or expense in enforcing any of the terms hereof, the undersigned agrees to pay the costs and expenses so paid or incurred by the holder, including, without limitation, reasonable attorneys' fees and costs." "The provisions of [the] Note are to be governed by the laws of the State of California . . . ."

In 2003, Firestone sued Hoffman on the Note. Firestone alleged that on or about November 28, 2002, he had demanded that Hoffman pay the principal and accrued interest under the Note, and that Hoffman had breached the Note by failing to pay. Firestone sought to recover the principal and interest due under the Note, as well as attorneys' fees and costs.

Hoffman's principal defenses, as developed in subsequent proceedings, were these: First, Hoffman claimed that he and Firestone had extinguished the obligations under the Note by means of a novation. Under the alleged novation, the Note was to be extinguished, Firestone was to write off the Note as uncollectible on his Canadian taxes, and Hoffman was to arrange for a corporation under his direction to pay Firestone $750,000 from two tax shelter transactions in Ireland. Second, Hoffman claimed that Firestone was already paid on the Note by a third party, CanWest Global Entertainment or one of its subsidiaries (CanWest), when CanWest purchased Firestone's company, Fireworks Entertainment, Inc. (Fireworks). Third, Hoffman claimed that any recovery by Firestone on the Note should be set off against any amounts that Hoffman recovers from Firestone on certain tort claims concerning their business dealings. Hoffman and a business entity with which he is associated have alleged those tort claims in a separate lawsuit filed in the superior court against Firestone (*Hoffman v. Firestone* (Super Ct. L.A. County, 2004, BC314040)). Hoffman's attempt to have the tort suit consolidated with this one failed when Firestone removed the tort suit to federal court, where it remained until after the jury returned its verdict in the instant case. On December 27, 2004, the federal district court entered an order remanding the tort suit to the superior court, where it is now stayed.

## II. Summary Judgment Proceedings

On May 5, 2004, Firestone moved for summary judgment or, in the alternative, summary adjudication. Hoffman opposed on the basis of the defenses described above, among others.

In reply, Firestone argued that the novation was "void" because the alleged new contract, involving the Canadian tax write-off and the Irish tax shelters, was "illegal in numerous ways, including purported attempts to violate Canadian community property and tax laws at the very least." As regards the claim that Firestone has already been paid on the Note by CanWest, Firestone argued that the claim was conclusively disproved by the contract for CanWest's acquisition of Fireworks from Firestone. Firestone did not introduce the contract but said he was willing to provide it to the court for in camera review, and he claimed that Hoffman's cocounsel had reviewed the contract and agreed that it "did not address" the Note. By way of supplemental declaration, Hoffman's cocounsel stated that he had said no such thing—rather, he had told Firestone's counsel that he "could not tell from the text of the agreement whether over $25 million in consideration paid to Mr. Firestone included reimbursement of the amounts" due under the Note. Finally, as regards Hoffman's set-off defense, Firestone acknowledged the existence of Hoffman's tort suit but nonetheless argued, without further explanation, that the set-off defense failed because Hoffman "has no demand for money against" Firestone, so "there are clearly NO mutual debts at issue."

The trial court denied Firestone's motion. The court determined that there were triable issues of fact concerning Hoffman's novation and reimbursement defenses. It further concluded that Firestone had not introduced a properly authenticated copy of the Note.

## III. Discovery Proceedings

Hoffman deposed Firestone but was dissatisfied with the results because Firestone's counsel instructed Firestone not to answer numerous questions that, according to Hoffman, were relevant to Hoffman's defenses. The questions related, for example, to the Irish tax shelters, to prior business dealings between Hoffman, Firestone, and affiliated business entities, and to conversations between Firestone and Greg Gilhooly, an attorney who was an executive at Fireworks, concerning the Note. Hoffman moved to compel answers to the unanswered questions, and the trial court granted the motion in its entirety on June 2, 2004.

After prevailing on the motion to compel, Hoffman moved for a continuance of the trial date, then set for July 27, 2004, in order to complete discovery. He also moved for letters rogatory to compel witnesses in Canada, Ireland, and the United Kingdom to testify and produce documents. The court ultimately executed the letters rogatory and continued the trial to November 23, 2004, but the court ordered Hoffman to pay Firestone's attorneys' fees and costs in connection with the discovery that was the basis for the continuance.

Further proceedings on the letters rogatory quickly broke down, however, because Hoffman refused to pay Firestone's estimated attorneys' fees in advance, despite the fact that the trial court had expressly ordered him to do so. Hoffman eventually took some sort of discovery from some of the foreign witnesses. Firestone's counsel did not participate, and the parties dispute whether the discovery complied with the terms of the letters rogatory and with applicable law.

## IV. Motions in Limine and Trial

The parties appeared for trial on November 23, 2004, in department 51 of the superior court before the Honorable Irving S. Feffer, who had presided over the case from its inception. Firestone announced ready, but Hoffman orally moved for another continuance. Judge Feffer denied Hoffman's motion and transferred the case to department 30 for trial before the Honorable Joseph R. Kalin.

Firestone had previously filed several motions in limine, all of which were still pending when the case was transferred. After the transfer, Judge Kalin heard oral argument on the motions and ruled on them.

Firestone's motion in limine No. 1 sought an order "forbidding any testimony relating to Firestone's tax returns during trial." Firestone's counsel confirmed at the hearing that the motion related exclusively to Firestone's Canadian tax returns.[1] In support of the motion, Firestone argued that the returns were "subject to the tax records privilege set forth in California Civil Code Section 1799.1a." He also argued that "California courts have interpreted state taxation statutes as creating a statutory privilege against disclosing tax returns." Previously, in his opposition to Hoffman's request for letters rogatory concerning the Canadian tax returns, Firestone had relied on a different source for the alleged privilege: He argued that the returns were protected by Business and Professions Code section 17530.5, which makes it

---

[1] At oral argument on appeal, Firestone's counsel conceded that, to his knowledge, Firestone does not file California returns.

illegal for paid tax preparers to disclose information obtained in the course of their work. Noting that this statutory prohibition applies only to "federal or state income tax returns" (Bus. & Prof. Code, § 17530.5), Firestone had argued that "the Canadian returns in question are 'federal' as well." And in addition to the privilege claim, Firestone argued that the Canadian tax returns were irrelevant, because "Firestone's tax returns are not in any way germane to Hoffman's refusal to make good on his debt." Hoffman opposed the privilege claim and argued that the returns were relevant because if Firestone did write off the Note on his Canadian taxes, then that would be circumstantial evidence that the purported novation, which called for just such a write-off, was real. The trial court granted the motion, excluding the Canadian tax returns on the grounds that they were "privileged and not relevant."

Firestone's motion in limine No. 2 sought an order "forbidding any testimony relating to Firestone's sale of his interest in Fireworks Entertainment, Inc. to Canwest." In support of the motion, Firestone argued that Hoffman "claims that Firestone sold his interest in the Promissory Note, but, as Firestone has stated in discovery, he has not done so." Firestone consequently sought to prevent Hoffman from bringing his "speculative fabulations" and "unadulterated speculation" before the jury, because they "could be severely prejudicial." In opposition, Hoffman argued that he wished to introduce testimony from Gilhooly, a former Fireworks executive, to the effect that CanWest paid off the Note to Firestone as part of CanWest's acquisition of Fireworks. The trial court granted the motion on the grounds that the evidence at issue was "not . . . relevant and would lead [the] jury to speculation."

Firestone's motion in limine No. 3 sought an order "forbidding any testimony relating to the alleged novation and the 'Irish tax shelters.' " In support of the motion, Firestone argued that "the object of the novation would have been an illegal contract," and that "[w]here a novation is voidable or invalid, the original agreement is never actually extinguished, and is thus still enforceable." He further asserted that "the alleged novating contract is illegal in numerous ways, including purported attempts to violate Canadian family and tax law at the very least[.]" And at the hearing on the motion, counsel for Firestone orally represented to the court that the Irish tax shelters had "been disallowed by the Irish tax authorities" and were "on appeal"; in a similar vein, he asserted that the "Irish tax deal" is "being considered by the Irish Court of Appeals, because the tax authority denied it." In opposition, Hoffman argued that the novation was not illegal and that even if it were, it would still serve to extinguish the parties' obligations under the Note.

The trial court evidently was persuaded by Firestone's argument that an illegal novation fails to extinguish the original contract and that the Irish tax

shelters and the Canadian tax write-off were of doubtful legality. For example, at one point the court asked Hoffman, "But can you have a novation on an illegal situation? I mean, if in fact you can't write this off in Canada, you can't get tax credit for it in Ireland or the United Kingdom, then you're saying you have a valid—a valid novation?" Later, the court stated that if Hoffman were allowed to introduce evidence that the novation involved the Irish tax shelters, then Hoffman would "have to argue the validity of these other agreements that would allow [Firestone] to collect $750,000, because unless the agreements are valid, he's never going to get the $750,000." The court concluded that it would not allow the introduction of evidence "beyond the fact that these parties may have had some kind of an oral agreement[,]" but "I don't want to try the English tax laws or the Canadian tax laws to get there." The court ruled in its minute order that Firestone's motion in limine was "granted as to the exclusion of evidence regarding the Irish Tax Shelters. The motion is denied as to defendant arguing the issue of Novation, [and] the court will make rulings during the trial as to issues of Novation without trying the law and validity of Canadian, Irish and U.K. law."

Firestone's motion in limine No. 4 sought an order "forbidding any testimony relating to Can[W]est's advance of Plaintiff's legal fees." In support of the motion, Firestone argued that evidence that CanWest was paying Firestone's "legal fees, with the understanding that [Firestone] would reimburse Can[W]est upon resolution of the suit[,]" would be "irrelevant and highly prejudicial." In opposition, Hoffman argued that CanWest's payment of Firestone's attorneys' fees should prevent Firestone from recovering attorneys' fees from Hoffman in this lawsuit. The trial court granted the motion on the ground that "[a]ttorney fees are an issue for the court post trial."

Firestone's motion in limine No. 5 sought broadly to prohibit Hoffman from "commenting about or introducing" any witnesses or any expert opinions that were not disclosed in discovery. The only undisclosed potential witness whom Firestone originally identified was Marian Salas, an accountant, but Firestone later supplemented his motion to identify Hoffman's wife as well. In opposition, Hoffman argued that he did not intend to present any expert witnesses at all, that Salas is his bookkeeper and would testify as a percipient witness concerning the treatment of the Note in Hoffman's own financial records, and that any testimony of his wife should not be excluded either. The trial court denied the motion without prejudice.

Firestone's motion in limine No. 6 sought an order "barring admission of any 'sworn statements' or other such narratives or declarations that [Hoffman] may offer from the witnesses identified in the British and Irish Letters Rogatory." In support of the motion, Firestone argued that Hoffman had

obtained the evidence at issue in violation of the trial court's order that he first advance Firestone's attorneys' fees, and that the evidence was otherwise obtained in violation of applicable law and consequently inadmissible. In opposition, Hoffman argued that the evidence was properly obtained and admissible. The trial court granted the motion both because Hoffman "did not comply with the court's order concerning advancing costs and fees for [Firestone's] counsel to appear at the foreign depositions," and because "[s]aid discovery was performed unilaterally and additionally raises issues of proper procedure and compliance with foreign law."

With the scope of admissible evidence thus circumscribed, the matter proceeded to trial. The court rigorously enforced its in limine rulings, prohibiting virtually all evidence and argument concerning the Irish tax shelters, Firestone's Canadian taxes, and CanWest's acquisition of Fireworks. The following examples of the court's evidentiary rulings at trial are by no means exhaustive.

Although the court permitted Hoffman to ask Firestone whether "anyone at any time ever reimbursed you for the funds you loaned, reflected in this note of $375,000," the court prohibited any questioning about Firestone's deposition testimony concerning Hoffman's theory that Firestone was in fact reimbursed through CanWest's acquisition of Fireworks. The court based its ruling on the ground that the testimony "deal[s] with other matters, and they're not directly related to this case."

The court likewise permitted Hoffman to testify in extremely general terms that, under the novation, Firestone would receive $750,000 instead of the $375,000 originally due under the Note. But the court prevented Hoffman from testifying in more detail concerning the terms of the novation or the transactions involved.

Again, on the basis of its narrow construction of the issues being tried, the court prohibited Hoffman from introducing a memorandum that, according to Hoffman, spelled out the terms of the novation. Firestone's counsel did not articulate a specific ground for objecting to the document, and the court's only stated basis for excluding it was that it was "a letter . . . to Mr. Firestone from Mr. Hoffman, and it indicates other business deals." At the same time, the court permitted Firestone to introduce a document in which Hoffman told Firestone that "all my previous offers or acknowledgements are withdrawn." But the court prohibited Hoffman from explaining which "offers or acknowledgments" he was referring to, on the grounds that "[t]he document does speak for itself," so "the jury will have to decide what it means." Firestone's counsel then argued to the jury that, according to that document, Hoffman himself revoked his offer of a novation, which was never accepted.

The court excluded the testimony of Salas, though the precise ground for the exclusion was not clear. Hoffman declined to call Gilhooly to testify because he determined that Gilhooly's testimony would be excluded under the court's in limine rulings. Hoffman made offers of proof with respect to both witnesses. In the end, the only witnesses to testify were Firestone and Hoffman.

On December 2, 2004, the jury returned a verdict for Firestone.

## V. Posttrial Proceedings

Firestone sought an award of attorneys' fees and prejudgment interest under the Note. He argued that he was entitled to interest at the rate of 7.5 percent from the time of the loan until he made formal demand for payment in late 2002, and at the federal short-term rate thereafter, through judgment. Firestone submitted both simple and compound interest calculations based on those rates.

Hoffman opposed Firestone's requests. He argued that the Note provides only for an award of attorneys' fees "paid or incurred" by Firestone, and that Firestone has "paid or incurred" none, because Can West paid all of Firestone's counsel's fees. As regards interest, Hoffman argued that Firestone could collect interest at the rate of 7.5 percent only through the Note's original due date (i.e., July 31, 1997), and at the federal short-term rate thereafter. Hoffman further argued that the Note provides for only simple interest.

The trial court rejected Hoffman's arguments. It awarded compound interest according to Firestone's calculation, in the amount of $211,270.91, and it awarded attorneys' fees of $360,703.08.[2]

Meanwhile, the federal district court entered its order remanding the tort suit against Firestone on December 27, 2004, roughly three weeks after the jury returned its verdict against Hoffman. Hoffman moved to stay enforcement of the judgment and to consolidate the tort suit with this case. The court denied the motion to stay enforcement. The record before us does not contain the ruling on the motion to consolidate, but it appears from our review of the dockets in this case and the tort suit that no consolidation occurred.

---

[2] The interest award in the final amended judgment appears to contain typographical errors. Firestone's compound interest calculation yielded an amount of $211,240.92, but the judgment awards interest of $211,270.91.

## STANDARD OF REVIEW

We generally review the trial court's decisions admitting or excluding evidence for abuse of discretion. (*City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 900 [122 Cal.Rptr.2d 802].)

## DISCUSSION

### I. Exclusion of Evidence

Hoffman argues that the trial court abused its discretion in excluding evidence he sought to introduce in his defense, and that he was prejudiced thereby. We agree. We will confine our discussion to the rulings on Firestone's motions in limine Nos. 1 through 3, because they are sufficient in themselves to warrant reversal.

### A. Canadian Tax Returns

■ The trial court excluded evidence concerning Firestone's Canadian tax returns on the basis of Firestone's arguments that the returns were "privileged and not relevant." The relevance issue is straightforward. Hoffman alleges that the Note was extinguished because he and Firestone entered into a novation. One of the terms of the alleged novation was that Firestone would write off the Note on his Canadian taxes. If Firestone did write off the Note on his Canadian taxes, then the jury could infer that (1) Firestone did consider the Note extinguished, and (2) Firestone and Hoffman did enter into a novation providing for the write-off. Any evidence that Firestone knew Hoffman had more than sufficient personal wealth to pay off the Note would further support the inference that Firestone had voluntarily decided to treat the Note as extinguished. Firestone could, of course, urge the jury not to draw those inferences, but there is nothing unreasonable about them. " 'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Firestone's Canadian tax returns are therefore relevant.

■ As for the privilege claim, Firestone has offered multiple explanations of its basis. In the trial court, Firestone initially relied upon Business and Professions Code section 17530.5, which makes it illegal for paid tax preparers to disclose information obtained in the course of their work. The statute on its face does not purport to create or codify a privilege shielding a litigant from discovery of *the litigant's own* tax returns or making those returns inadmissible at trial—it operates only to prevent persons in the business of preparing others' tax returns from voluntarily disclosing *their clients'* information.

Next, Firestone relied upon Civil Code section 1799.1a, and he renews the argument on appeal. That statute prohibits the disclosure of "information obtained from a federal or state income tax return or any information obtained from a tax schedule submitted with the return by a consumer in connection with a financial or other business-related transaction . . . ." (Civ. Code, § 1799.1a.) Thus, the statute on its face prohibits only the disclosure of tax information obtained *from a consumer in connection with a financial or other business-related transaction.* Like Business and Professions Code section 17530.5, it in no way purports to create or codify a privilege shielding a litigant from discovery of the litigant's own tax returns or making those returns inadmissible at trial.

Both statutes are inapplicable for an additional, independent reason: Both of them are expressly limited to "federal or state" income tax returns. (Bus. & Prof. Code, § 17530.5; Civ. Code, § 1799.1a.) Consequently, neither applies to foreign tax returns. In the trial court, Firestone argued that "the Canadian returns in question are 'federal,' " but he does not renew the argument on appeal.[3] The argument has no merit, for at least the following reasons: (1) Other statutory provisions indicate that when the Legislature wishes to refer to foreign taxes, it uses the word "foreign" (see, e.g., Civ. Code, § 731.15, subd. (b) ["Any tax levied by any authority, federal, state, or foreign . . . ."]); (2) there is no policy reason of which we are aware for extending the coverage of the statutes in question to taxes in foreign countries whose governments are in some sense "federal" but excluding other foreign countries; and (3) there is no evidence in the record, and no request for judicial notice, that Canadian tax returns are, in any sense, "federal."

█ Finally, both in the trial court and on appeal, Firestone relies upon California case law that does create a privilege for tax returns. The problem, again, is that the privilege does not apply to foreign tax returns. Rather, the privilege arises from California statutes that generally prohibit *California* tax authorities from disclosing tax return information, subject to certain exceptions. (See *Webb v. Standard Oil Co.* (1957) 49 Cal.2d 509, 512–514 [319 P.2d 621] (hereafter *Webb*); *Sav-On Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 6–7 [123 Cal.Rptr. 283, 538 P.2d 739].) The Supreme Court has reasoned that the purpose of those statutes is "to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against him for other purposes[,]" and that this purpose would be defeated if "the information can be secured by forcing the taxpayer to produce a copy of his return[.]" (*Webb, supra,* 49 Cal.2d at p. 513.) The court in *Webb* extended application of the

---

[3] In his motion in limine No. 1, Firestone elided the issue by referring generically to "tax returns" without ever stating that the returns at issue were Canadian (though the motion does contain one unexplained reference to the "Canadian taxing authorities").

privilege to federal tax returns merely as a means of protecting the privileged status of California returns, because "forcing disclosure of the information in the federal tax return would be equivalent to forcing disclosure of the state returns and would operate to defeat the purposes of the state statute." (*Webb, supra,* 49 Cal.2d at pp. 513–514.)

There is no legal authority for application of the privilege to foreign tax returns. As a matter of policy, California has no interest in devising means to ensure effective tax enforcement in Canada—that is exclusively the prerogative of the Canadian government.[4] And there is also no basis in this record for application of the privilege to Firestone's Canadian tax returns as a means of protecting the privileged status of his California returns, because there is no evidence that he files California returns or that, if he does, they overlap with his Canadian returns in any material respect. Indeed, Firestone's counsel conceded at oral argument that, to his knowledge, Firestone does not file California returns.

On appeal, Firestone acknowledges that available legal authority applies the privilege only to California and (United States) federal tax returns. His entire argument for extension of the privilege to his Canadian returns consists of the following sentence: "There is no logical reason why the privilege should not extend to tax returns for other jurisdictions as well." For the reasons already stated, we disagree.

 Firestone's Canadian tax returns are relevant and are not privileged. The trial court therefore abused its discretion when it granted Firestone's motion in limine No. 1.

## B., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[4] Hoffman has consistently contended that Canadian tax returns are not privileged under Canadian law, and Firestone has never argued to the contrary.

*See footnote, *ante,* page 1408.

## DISPOSITION

The judgment is reversed and the superior court's in limine rulings are vacated. The superior court is instructed to reopen discovery and to reconsider whether this case should be consolidated with case No. BC314040.

Hoffman is awarded his costs on appeal.

Spencer, P. J., and Vogel, J., concurred.