[No. H030560. Sixth Dist. Dec. 18, 2006.]

DAVID BRITTS et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
BERG & BERG ENTERPRISES, LLC, Real Party in Interest.

1114

1116

O'Melveny & Myers, Meredith N. Landy, Lori E. Romley and Sara M. Folchi for Petitioners.

No appearance for Respondent.

Allen Matkins Leck Gamble & Mallory, Robert R. Moore and Michael J. Betz for Real Party in Interest.

## OPINION

**DUFFY, J.**—In this original proceeding, we address whether the stay on "[a]ll discovery proceedings" (Code Civ. Proc., § 425.16, subd. (g))[1] imposed upon the filing of an anti-SLAPP[2] motion extends to discovery motions. The proceeding arises by petition for a writ of mandate directing the superior court to vacate its order (1) granting real party plaintiff's motion to compel production of documents and the occurrence of a deposition; (2) finding a waiver of petitioners' objections to the discovery; and (3) imposing sanctions of $5,000 for the petitioners' failure to have responded to the discovery. Petitioners did not file opposition to the discovery motion but instead filed an anti-SLAPP motion on the day the opposition was due. The anti-SLAPP motion was still pending in another department of the superior court when the discovery motion was later heard, when the order was subsequently entered, and on the date petitioners were to comply with the order by providing discovery responses and paying sanctions 20 days later.

As provided under section 425.16, subdivision (g), upon the filing of an anti-SLAPP motion, "all discovery proceedings" in the action are stayed until notice of entry of the trial court's ruling on the motion. The parties to this writ proceeding do not dispute that the term "discovery proceedings" in this context includes the various factfinding processes authorized by the Civil Discovery Act (§ 2016.010 et seq.) such as the propounding of interrogatories and document demands and the taking of depositions, or that these proceedings are indeed stayed when a special motion to strike is filed in an action. But they do dispute whether a discovery motion that is pending when an anti-SLAPP motion is filed is also stayed, and whether the discovery stay imposed by section 425.16, subdivision (g), generally applies to discovery motions.

We hold that the language of the statute, which we construe broadly and in light of the statute's legislative goals and history, must be read to mean that discovery motions, including those that are pending, are also stayed upon the filing of an anti-SLAPP motion. The trial court here proceeded with the pending discovery motion and issued an order against petitioners compelling discovery, deeming their objections waived, and imposing sanctions against them after their anti-SLAPP motion was filed and the discovery stay invoked. We accordingly grant petitioners' request for writ relief.

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

[2] "SLAPP" is the now commonly used acronym for a "strategic lawsuit against public participation." SLAPP suits are the target of the special motion to strike as provided at section 425.16.

## STATEMENT OF THE CASE

On July 8, 2005, real party in interest (plaintiff below) Berg & Berg Enterprises, LLC (Berg), brought an action against petitioners David Britts, Tony Daffer, Barry Eggers, Diana Everett, John W. Gerdelman, Cliff Higgerson, Joseph Kennedy, and Bob Williams, as well as another codefendant, John Boyle, alleging a single cause of action for breach of fiduciary duty. The complaint alleged that petitioners and Boyle were former directors of an entity known as Pluris, Inc., of which Berg was a creditor. When Pluris, Inc., became insolvent, petitioners and Boyle allegedly breached their fiduciary duty to Berg by liquidating the company through an assignment for the benefit of creditors, rather than through bankruptcy proceedings.

In response to petitioners' demurrer to the complaint, Berg filed a first amended complaint, which again pleaded the breach of fiduciary duty cause of action and added causes of action for negligent and intentional misrepresentation as species of fraud. Berg also served a demand for production of documents on petitioners under section 2031.010. Petitioners' responses to both the amended pleading and the demand for production were due on January 3, 2006. On that day, Berg also served a notice of taking deposition of petitioner Bob Williams under section 2025.210. The notice set the deposition to take place on January 17, 2006, and also demanded the production of documents at the deposition.

In lieu of responding to the complaint or the discovery requests, on January 3, 2006, petitioners filed a special motion to strike under section 425.16—the anti-SLAPP statute—directed at Berg's negligent and intentional misrepresentation causes of action. They also separately demurred to the breach of fiduciary duty cause of action. All parties agreed that the filing of the anti-SLAPP motion effected a stay on Berg's pending discovery efforts under section 425.16, subdivision (g). Prior to the hearing on petitioners' motions, Berg voluntarily dismissed its fraud-based causes of action, apparently recognizing that the motion to strike those causes of action was well taken.

On February 24, 2006, the trial court (Hon. C. Randall Schneider), by written order, sustained petitioners' demurrer with leave to amend. The court determined that Berg could not state an individual claim for relief but could amend to plead the claim derivatively. Finding that it would have granted the anti-SLAPP motion had Berg not dismissed the fraud causes of action, the court also determined that petitioners were entitled to an award of attorney fees under the anti-SLAPP statute, the amount thereof to be determined by

separate motion. (§ 425.16, subd. (c).) Also on February 24, 2006, Berg renoticed the deposition of Bob Williams to take place on March 8, 2006.

On March 1, 2006, petitioners served their responses to Berg's demand for production of documents. The responses were composed of objections, which nevertheless constituted a "response" under section 2031.210. On March 2, 2006, Berg served by hand delivery notice of entry of the court's February 24 order. At the same time, Berg contended that the discovery responses served by petitioners the previous day were untimely and that all objections had consequently been waived. Berg argued that the responses had been due on February 24, 2006, since the court's order indicating how it would have ruled on petitioners' anti-SLAPP motion and finding that they were entitled to attorney fees had been served by the clerk that day, effectively terminating the discovery stay under section 425.16, subdivision (g). The parties met and conferred on the timeliness and adequacy of petitioners' responses, but were unable to resolve their dispute.

On March 3, 2006, petitioners served their objections to the renoticed deposition of Bob Williams under section 2025.410. Although Berg had served the day before a notice of entry of the court's order stating how it would have ruled on petitioners' anti-SLAPP motion, the grounds for objection to the deposition included that the stay was still operative. On March 10, 2006, Berg for a third time noticed the deposition of Bob Williams to take place on March 23, 2006. Petitioners again objected to the deposition on numerous grounds, which this time did not include that the anti-SLAPP discovery stay was still in effect.

On March 16, 2006, Berg filed its second amended complaint, again pleading a single cause of action against petitioners for breach of fiduciary duty.

On April 11, 2006, Berg filed a motion to compel petitioners' further responses to its demand for production, to compel Williams's deposition, and for discovery sanctions. The hearing was set for May 12, 2006.

On April 20, 2006, petitioners applied ex parte for an order extending time to respond by demurrer or motion to the second amended complaint and setting a briefing and hearing schedule for those proceedings. Berg opposed the application but expressly requested that if the court were to grant additional time for the petitioners to respond to the amended pleading and petitioners were to file another anti-SLAPP motion, that the court also allow Berg's then-pending discovery motion to "proceed notwithstanding the dis-

covery stay [that would be] imposed by the anti-SLAPP statute." The trial court (Hon. John F. Herlihy) issued an order directing petitioners to file their response to the second amended complaint and any intended anti-SLAPP motion on or before May 1, 2006, with the hearing to take place on June 22, 2006. The court's order did not address Berg's pending discovery motion but, according to petitioners, Judge Herlihy said at the ex parte hearing that "he did not believe that the court had the power to issue [Berg's requested order concerning its pending discovery motion] because the anti-SLAPP legislation was to the contrary."

In compliance with the court's order, on May 1, 2006, petitioners filed their demurrer and second anti-SLAPP motion. But they filed no opposition to Berg's discovery motion to compel, which was due that same day under section 1005. Petitioners claimed they were relieved from filing an opposition due to the stay on discovery proceedings, which was reimposed under the anti-SLAPP statute upon the filing of their second special motion to strike. (§ 425.16, subd. (g).) From May 5 to May 10, 2006, petitioners repeatedly requested Berg's counsel to notify the court of the discovery stay and to take the discovery motion off calendar. Berg's counsel refused to do so, asserting that discovery pending before the May 1 filing of petitioners' new anti-SLAPP motion "remain[ed] viable."

On May 10, 2006, two days before the hearing on the discovery motion, petitioners' counsel wrote a letter to the discovery judge (Hon. Socrates P. Manoukian) informing him of the filing of the anti-SLAPP motion and of their position that that filing had resulted in a stay on all discovery proceedings, including the pending discovery motion. Berg's counsel responded the next day by sending his own letter to Judge Manoukian, which stated counsel's belief that the hearing on the motion to compel should proceed. Later that day, petitioners' counsel wrote another letter to the court responding to Berg's counsel's letter and reasserting that the discovery stay prevented the discovery motion from going forward and relieved them from filing opposition thereto.

Meanwhile, on May 5, 2006, the trial court (Hon. C. Randall Schneider) heard petitioners' motion for an award of fees incurred as a result of their first anti-SLAPP motion. Petitioners had sought fees in the amount of $13,226 but at the hearing, the court stated its intention to award only $5,000. The court's rationale in reducing the amount of fees to be awarded was that petitioners had not met and conferred with Berg before filing the first

anti-SLAPP motion, which had resulted in Berg's voluntary dismissal of the targeted fraud causes of action to which the motion had been directed.[3]

On May 12, 2006, the trial court heard Berg's motion to compel discovery and for sanctions. At the hearing, the judge (Hon. Socrates P. Manoukian) expressed irritation that petitioners had not informed him earlier about the filing of the second anti-SLAPP motion and at a time before he had devoted considerable effort to his evaluation of the motion's merits. The court would not allow petitioners to speak to the merits, but instead inquired, repeatedly, why they had elected to file an anti-SLAPP motion instead of an opposition to the discovery motion. The judge then twice directed petitioners' counsel to provide him with authority holding that "where a motion to compel has already been filed, the filing of a SLAPP motion in all circumstances stays the proceedings on the motion to compel."

Counsel was unable to do so, but did note that the anti-SLAPP statute itself states that "all discovery proceedings" are stayed upon the filing of the motion to strike. The court acknowledged that Berg had not filed a motion to allow discovery under section 425.16, subdivision (g), which permits the court, for good cause, to allow specified discovery while an anti-SLAPP motion is pending and in order for the plaintiff to respond to it. The court then expressed its belief that petitioners' "tactic" in filing the anti-SLAPP motion instead of an opposition to the discovery motion was in "bad faith" and took the matter under submission.[4]

On June 22, 2006, the trial court (Hon. Neal A. Cabrinha) heard petitioners' second anti-SLAPP motion and demurrers. At the hearing, the judge orally stated that the anti-SLAPP motion "will be denied." He also said that the "[c]omplaint probably needs some further work" but he did not indicate

---

[3] The implication of the court's ruling was that the failure to have met and conferred before filing the motion was a breach of professional courtesy. The record further suggests that the trial court's perception—right or wrong—of sharp practice and a lack of civility and professional courtesy among counsel in this case affected more than that single ruling below. Counsel would be wise to remember that the snide personal attacks, hyperbole, and rhetoric that appear in this record do not aid in, and indeed distract from, the proper resolution of the issues. Effective and vigorous advocacy does not require this sort of behavior, which counsel for Berg in particular continues in briefing before this court. Rather than deal with the legal issue presented through effective analysis and persuasive reasoning, counsel instead mostly invokes invective, repeatedly accusing petitioners and their counsel of "game playing," "stonewalling," and "abuse of both the discovery process and the anti-SLAPP statute." These allegations of nefarious motive are based on no more than innuendo and speculation and they are even more misplaced in light of the result here.

[4] See footnote 3, *ante*.

just how he intended to rule on the demurrers. The court then asked counsel for Berg to prepare an order denying the anti-SLAPP motion and took the demurrers under submission. But no written order on the anti-SLAPP motion was immediately forthcoming.

On August 4, 2006, the trial court (Hon. Socrates P. Manoukian) issued a written order, served by the clerk that day, granting Berg's motion to compel further responses to the demand for production of documents, compelling petitioner Williams to appear for deposition, and imposing monetary sanctions in the amount of $5,000 against petitioners. The order noted that Berg's motion was "not opposed" and, further, that petitioners' "[o]bjections [to discovery] are deemed waived." Petitioners were ordered to pay the sanctions and to comply with the order within 20 calendar days, by August 24, 2006.

On August 16, 2006, after Berg refused to stipulate to a three-week stay of enforcement of the August 4, 2006 discovery order, petitioners applied to the court (Hon. Socrates P. Manoukian) ex parte for a stay of enforcement to allow them to request writ relief from this court. That application was denied.

On August 23, petitioners filed their "petition for alternative or peremptory writ of mandate and/or prohibition" in this court. They also sought an immediate stay of the discovery order, which this court granted in order to permit further consideration of the issues raised by the petition. This court also requested preliminary opposition from Berg as the real party in interest.

On August 30, 2006, the superior court clerk served the trial court's (Hon. Neal A. Cabrinha) written orders on petitioners' second anti-SLAPP motion and demurrers. The court sustained the demurrers with leave to amend and "in light of" that ruling, denied the anti-SLAPP motion as "moot."

We issued an order to show cause why the relief prayed for in the petition should not be granted and the matter has now been fully briefed.

## DISCUSSION

### I. *Petitioners' Contentions and Standard of Review*

The issue presented by the petition for writ is whether the anti-SLAPP statute's stay on "[a]ll discovery proceedings" applies generally to discovery motions, and in particular, those motions already pending at the time the anti-SLAPP motion is filed. (§ 425.16, subd. (g).) Petitioners contend that it does and that the trial court erred in proceeding with Berg's discovery motion

to compel and for sanctions while their anti-SLAPP motion was pending in the action. They assert that even though the anti-SLAPP statute allows a plaintiff to engage in specified discovery on noticed motion and for good cause shown, Berg made no such motion here. Petitioners also urge that they have been further prejudiced because while the stay was still in effect, the trial court issued its order directing them to respond to Berg's discovery requests, imposing monetary sanctions, and finding that petitioners had failed to oppose the motion to compel and had waived their objections and assertions of privilege.

The standard of review generally applicable to review of discovery orders is abuse of discretion, as management of discovery lies within the sound discretion of the trial court. (*John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1186 [45 Cal.Rptr.3d 316, 137 P.3d 153]; *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 380 [15 Cal.Rptr. 90, 364 P.2d 266]; *Save Open Space Santa Monica Mountains v. Superior Court* (2000) 84 Cal.App.4th 235, 245–246 [100 Cal.Rptr.2d 725].) In particular, the abuse of discretion standard of review ordinarily applies to review of an order on a motion to compel discovery (*2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377, 1387 [7 Cal.Rptr.3d 197]) and to review of an order imposing discovery sanctions for discovery misuse. (*R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 496 [89 Cal.Rptr.2d 353].)

Notwithstanding these principles, where the propriety of a discovery order turns on statutory interpretation, an appellate court may determine the issue de novo as a question of law. (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071 [19 Cal.Rptr.3d 324].) We proceed to do so here with bedrock rules of statutory construction in mind.

In construing a statute, a court's "task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment. [Citation.] We look first to the words of a statute, which are the most reliable indications of the Legislature's intent. [Citation.] We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole. [Citations.]" (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487 [30 Cal.Rptr.3d 823, 115 P.3d 98].) When statutory language is capable of more than one construction, courts must " ' "give the provision a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." ' [Citations.]" (*In re Reeves* (2005) 35 Cal.4th 765, 771, fn. 9 [28 Cal.Rptr.3d 4, 110 P.3d 1218].)

## II. *Analysis*

 The anti-SLAPP statute sets forth a procedure for obtaining early dismissal of SLAPP suits by way of a special motion to strike. (§ 425.16.) The preamble of the statute sets forth the Legislature's desire "to encourage continued participation in matters of public significance" and to achieve this end, the statute "shall be construed broadly." (§ 425.16, subd. (a); see *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 59–60 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) With its two-step analytical process that shifts the burden to the plaintiff once a defendant demonstrates having met its threshold burden,[5] the statute was designed to protect defendants from having to expend resources defending against frivolous SLAPP suits unless and until a plaintiff establishes the viability of its claim by a prima facie showing. (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235 [83 Cal.Rptr.2d 677].)

"The anti-SLAPP legislation in section 425.16 was crafted to provide an efficient means of dispatching a plaintiff's meritless claims at the inception of the lawsuit to promote 'continued participation in matters of public significance.' (§ 425.16, subd. (a).) [Consistently with this purpose], the filing of a section 425.16 motion to strike stays discovery until the motion is ruled on, although the court has discretion to permit specified discovery for good cause." (*Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 183 [118 Cal.Rptr.2d 330].)

 The statute's truncated timeframe for anti-SLAPP filings and hearings (§ 425.16, subd. (f)); its provision for a stay of all discovery proceedings (§ 425.16, subd. (g)); and its allowance of mandatory attorney fees to the prevailing defendant (§ 425.16, subd. (c)) all reflect the statutory purpose to prevent and deter SLAPP suits by ending them early and without great cost to the SLAPP target. (See *Equilon*, *supra*, 29 Cal.4th at p. 65.) In enacting section 425.16, "not only did the Legislature desire early resolution to minimize the potential costs of protracted litigation, it also sought to protect defendants from the burden of traditional discovery pending resolution of the motion." (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1190 [121 Cal.Rptr.2d 794].)

---

[5] "In evaluating an anti-SLAPP motion, the trial court first determines whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity. (*Equilon*[, *supra*, 29 Cal.4th at p. 67.]) . . . [¶] If the court finds the defendant has made the threshold showing, it determines then whether the plaintiff has demonstrated a probability of prevailing on the claim. ([*Ibid.*])" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].)

Section 425.16, subdivision (g), states in part that "[a]ll discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion." This language has been uniformly interpreted to provide a general stay on discovery in accordance with the statute's overall purposes. (See, e.g., *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958]; *Equilon, supra,* 29 Cal.4th at p. 65; *Tutor-Saliba Corp. v. Herrera* (2006) 136 Cal.App.4th 604, 617 [39 Cal.Rptr.3d 21] ["[g]enerally, discovery is closed once a motion to strike under section 425.16 has been filed"]; *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 650 [24 Cal.Rptr.3d 619] [anti-SLAPP statute imposes a "general stay on discovery" in the action and the motion to strike is usually heard without discovery]; *Fair Political Practices Com. v. American Civil Rights Coalition, Inc.* (2004) 121 Cal.App.4th 1171, 1175 [18 Cal.Rptr.3d 157] [filing of "anti-SLAPP motion triggers suspension of discovery in the case until notice of entry of the order ruling on the motion"]; *The Garment Workers Center v. Superior Court* (2004) 117 Cal.App.4th 1156, 1161 [12 Cal.Rptr.3d 506]; *Slauson Partnership v. Ochoa* (2003) 112 Cal.App.4th 1005, 1021 [5 Cal.Rptr.3d 668] [discovery stayed "to minimize the costs and burdens of unmeritorious litigation directed at free speech rights"]; *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1388 [129 Cal.Rptr.2d 892].)

■ The language of section 425.16, subdivision (g)'s stay on "all discovery proceedings" is clear as it pertains to the various factfinding processes that litigants engage in under the Civil Discovery Act such as the noticing of depositions and the propounding of interrogatories, demands for inspection, requests for admission, and the like. (See, e.g., discovery methods enumerated at § 2019.010.) Once an anti-SLAPP motion is filed, all of these discovery processes are stayed, unless the plaintiff obtains an order permitting specified discovery for good cause shown. (§ 425.16, subd. (g).) Even then, case law has interpreted good cause in this context to require a showing that the specified discovery is necessary for the plaintiff to oppose the motion and is tailored to that end. (*Tutor-Saliba Corp. v. Herrera, supra,* 136 Cal.App.4th at p. 617; *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 359 [37 Cal.Rptr.3d 480]; *Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 922 [20 Cal.Rptr.3d 385]; *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 593 [132 Cal.Rptr.2d 789]; *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps, supra,* 99 Cal.App.4th at pp. 1189–1190; *Slauson Partnership v. Ochoa, supra,* 112 Cal.App.4th at p. 1021.)

But the precise question here concerns whether the term "discovery proceedings" as used in the anti-SLAPP statute includes motions to compel

further responses to discovery and for discovery sanctions such that these matters are also stayed under section 425.16, subdivision (g), upon the filing of a special motion to strike—a question not specifically addressed by prior cases. The anti-SLAPP legislation's purpose to nip SLAPP suits in the bud, with minimal costs to the target defendant, suggests that the answer is yes. And this construction of the term does no violence to it, even though the term in other contexts might also reasonably be construed to refer only to available discovery methods.

Section 425.16 does not define the term "discovery proceedings." While it does seem logical that this broad and general term would naturally include both discovery efforts and discovery motions,[6] the term is also used (and similarly not defined) in the Civil Discovery Act in a manner that narrowly refers to the various discovery methods available to litigants as distinct from discovery motions. (See, e.g., § 2024.020 ["[A]ny party shall be entitled as a matter of right to complete *discovery proceedings* on or before the 30th day, and to have *motions concerning discovery* heard on or before the 15th day, before the date initially set for the trial of the action" (italics added)]; § 2024.030 [same usage for completion of expert discovery]; § 2024.050 [same usage for motions to extend either the discovery cutoff or the discovery motion cutoff, or to reopen discovery after the setting of a new trial date]; § 2024.060 [same usage for agreements to extend time to complete discovery proceedings or to hear discovery motions]; but see § 2023.010 [misuses of the "discovery process" include both failing to submit to an authorized method of discovery or unsuccessfully and without substantial justification making or opposing a discovery motion].)

But as petitioners point out, these sections of the Civil Discovery Act that make a distinction between discovery methods—there referred to as "discovery proceedings"—and discovery motions generally concern pretrial scheduling or timing matters. In that context, it is necessary to distinguish the two

---

[6] As petitioners point out, the term "discovery proceedings" has frequently been used in cases to refer to both discovery efforts engaged in by parties litigant and discovery motion practice before a court. (See, e.g., *John B. v. Superior Court, supra,* 38 Cal.4th at p. 1184; *Firestone v. Hoffman* (2006) 140 Cal.App.4th 1408, 1412–1413 [45 Cal.Rptr.3d 534]; *Matrixx Initiatives, Inc. v. Doe* (2006) 138 Cal.App.4th 872, 881 [42 Cal.Rptr.3d 79]; *Roberts v. Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal.Rptr. 309, 508 P.2d 309] [term "discovery proceedings" as referring to trial court orders concerning discovery]; *San Francisco Unified School Dist. v. Superior Court* (1981) 116 Cal.App.3d 231, 234 [172 Cal.Rptr. 42] [same]; *Volkswagenwerk Aktiengesellschaft v. Superior Court* (1981) 122 Cal.App.3d 326, 328 [175 Cal.Rptr. 888] [same]; *Fremont Indemnity Co. v. Superior Court* (1982) 137 Cal.App.3d 554, 558 [187 Cal.Rptr. 137] [term "discovery proceedings" as referring to motions to compel]; *Wortham & Van Liew v. Superior Court* (1987) 188 Cal.App.3d 927, 930 [233 Cal.Rptr. 725] [same]; *Williams v. Volkswagenwerk Aktiengesellschaft* (1986) 180 Cal.App.3d 1244, 1252 [226 Cal.Rptr. 306] [same].)

processes so that motions to resolve discovery disputes may naturally be heard *after* the time to respond to disputed discovery has passed.

■ Despite the more restricted meaning of the term "discovery proceedings" in the Civil Discovery Act, both the aims of the anti-SLAPP statute and the legislative mandate that it is to be construed broadly require that the term "discovery proceedings" in this context include discovery motions so that these matters are also stayed upon the filing of a special motion to strike. If this were not so, a calculating plaintiff who anticipates a defendant filing an anti-SLAPP motion could successfully thwart the statute's purposes by propounding voluminous written discovery at the earliest possible time (generally, 10 days after service of summons or appearance by defendant (§§ 2030.020, subd. (b), 2031.020, subd. (b), 2033.020, subd. (b)) and then immediately moving to compel responses upon the targeted defendant's objections to discovery, all before the 60-days-from-service-of-summons deadline for the filing of the anti-SLAPP motion under section 425.16, subdivision (f). This would have the deleterious effect of forcing the targeted defendant to expend sums toward (perhaps unrelated) discovery *before* the plaintiff demonstrates in opposition to the anti-SLAPP motion that his or her claim has prima facie viability. This effect is clearly at odds with the anti-SLAPP statute and its purposes. (*Sipple v. Foundation for Nat. Progress, supra,* 71 Cal.App.4th at p. 235; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 858–859 [44 Cal.Rptr.2d 46].)

■ Normally, a term having a specific meaning in one area of the law should be construed similarly elsewhere. But the rules of statutory construction permit different interpretations of the same or similar terms when the terms appear in different statutory schemes, each with a different legislative policy. Where such policies reveal a distinct legislative intent behind each respective statutory scheme, absolute symmetry in the construction of a term is not required. (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 782–783 [11 Cal.Rptr.3d 222, 86 P.3d 290]; *Milligan v. City of Laguna Beach* (1983) 34 Cal.3d 829, 835 [196 Cal.Rptr. 38, 670 P.2d 1121]; *Scottsdale Ins. Co. v. State Farm Mutual Automobile Ins. Co.* (2005) 130 Cal.App.4th 890, 899 [30 Cal.Rptr.3d 606]; *Benun v. Superior Court* (2004) 123 Cal.App.4th 113, 120 [20 Cal.Rptr.3d 26].)

■ The legislative intent behind the anti-SLAPP statute and its specific purposes are distinct from those general legislative policies and purposes evident in the Civil Discovery Act, which regulates pretrial factfinding and production of evidence.[7] Therefore, that the term "discovery proceedings" as

---

[7] "The purposes of California's discovery statutes are, 'among other things, to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate preparation

used in the Act does not generally extend to discovery motions does not compel the same narrow construction of this term in the anti-SLAPP statute, especially when both constructions of the term are reasonable, depending on context, and such construction could very well thwart the legislative purposes of that statute. Thus, we conclude that the stay on all "discovery proceedings" as provided in the anti-SLAPP statute applies to discovery motions, including those already pending at the time the special motion to strike is filed, even though this term has a more narrow meaning in the Civil Discovery Act.

Accordingly, the trial court erred not only in proceeding with the hearing on Berg's discovery motion while petitioners' second anti-SLAPP motion was pending, but also in issuing its order compelling their compliance with discovery requests, imposing monetary sanctions against them, and finding a waiver of their objections. Moreover, if the determination of a waiver of objections was based on an implied finding that petitioners' March 1, 2006 written objections to Berg's demand for documents were untimely, such a finding would be erroneous. Although on February 24, 2006, the trial court had issued its written order stating that it would have granted petitioners' first anti-SLAPP motion had Berg not dismissed the targeted fraud causes of action, Berg did not serve a notice of entry of that order until March 2, 2006. This rendered the objections served by petitioners the preceding day timely because the stay on discovery proceedings imposed by the filing of the first anti-SLAPP motion was not lifted until Berg served such notice of entry of the court's order. Under sections 664.5 and 1019.5, and rule 309 of the California Rules of Court, "notice of entry of the judgment" in this context can only mean when a party serves written notice of entry of the order ruling on the anti-SLAPP motion or when the clerk of the court serves a copy of the ruling on the parties by order of the court. Neither of these events had happened here by the time petitioners served their objections to the document demand on March 1, 2006, in relation to their first anti-SLAPP motion.[8]

 Berg contends as a fallback that even if the mandatory stay provided at section 425.16, subdivision (g), applies to discovery motions, the trial court

and trial; to prevent delay; and to safeguard against surprise.' [Citations.]" (*Plunkett v. Spaulding* (1997) 52 Cal.App.4th 114, 127 [60 Cal.Rptr.2d 377], overruled on another ground in *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 39–40 [91 Cal.Rptr.2d 293, 989 P.2d 720].)

[8] The same reasoning applies to the stay on discovery proceedings imposed by the filing of petitioners' second anti-SLAPP motion. As noted, the trial court's orders denying the second motion as "moot" in light of its concurrent rulings on demurrer were filed below and served by the clerk on August 30, 2006. The record does not contain a written notice of entry of the orders served by any party, which would have had the effect of terminating the second stay. Thus, it appears the stay was still in effect when the trial court issued the discovery order on August 4, 2006, and on the date by which petitioners were to have complied with it 20 days later, notwithstanding Judge Cabrinha's oral comment from the bench on June 22, 2006, that the second anti-SLAPP motion "will be denied."

had the "inherent power" to proceed with Berg's motion to compel and to issue its discovery order. We do not contest that, by virtue of the statute, the court had the discretionary power to allow discovery despite the stay "on noticed motion and for good cause shown." (§ 425.16, subd. (g).) But in the absence of such a noticed motion, the anti-SLAPP statute prescribed the court's power to allow or proceed with discovery proceedings, and the court lacked inherent power to act directly contrary to the statutory mandate. "Courts, of course, . . . have ' "inherent supervisory and administrative powers which enable them to carry out their duties, and which exist apart from any statutory authority." [Citation.]' [Citation.] [But these] inherent powers may be exercised only if the procedure or practice of the court is not in conflict with a specified statutory procedure. [Citation.]" (*Motion Picture & Television Fund Hospital v. Superior Court* (2001) 88 Cal.App.4th 488, 492 [105 Cal.Rptr.2d 872].)

 It is now settled that without violating separation of powers prin- ciples, the Legislature may enact laws that govern the procedures and evidentiary rules applicable in judicial proceedings provided that the rules "[do] not defeat or materially impair" the core functions of the judiciary, which derive from article III, section 3 of the California Constitution. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1101–1103 [29 Cal.Rptr.3d 249, 112 P.3d 636] and cases cited therein.) "One of the core judicial functions that the Legislature may regulate but not usurp is 'the essential power of the judiciary to resolve "specific controversies" between parties.' [Citations.]" (*Id.*, at p. 1103.) Nothing about the stay on discovery proceedings as provided at section 425.16, subdivision (g), interferes with this core judicial function. It follows that, contrary to Berg's contention, the court did not possess the inherent power to ignore or act contrary to the statutory discovery stay based on either a prejudgment about the merits of petitioners' pending anti-SLAPP motion (set before a different judge) or speculation about their motives or "tactics" in bringing it.

 Due to the imposition of the mandatory stay on "all discovery proceedings" as provided by section 425.16, subdivision (g), and in the absence of a successful motion by Berg to allow limited discovery under this same section, the trial court erred in proceeding with Berg's discovery motion and in issuing the discovery order. Petitioners would suffer irreparable harm by virtue of the court's order, not least because it erroneously deemed their discovery objections, including those asserting claims of privilege, "waived." We accordingly determine that this is a proper case for writ relief and grant the petition.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its August 4, 2006 discovery order, to schedule a new hearing on Berg's motion to compel and for discovery sanctions with a briefing schedule that allows petitioners a reasonable time to file opposition to the motion on its merits, and to consider the motion anew in accordance with the views expressed in this opinion. Our temporary stay shall remain in effect until this opinion becomes final. Petitioners are awarded their costs in this proceeding.

Premo, Acting, P. J., and Elia, J., concurred.