[No. B223212. Second Dist., Div. One. July 15, 2011.]

NEWLIFE SCIENCES, LLC, Plaintiff, Cross-defendant and Respondent, v. RONALD WEINSTOCK et al., Defendants, Cross-complainants and Appellants;
MALTA RESOURCES, LLC, et al., Cross-complainants and Appellants;
JOHN CROSSON et al., Cross-defendants and Respondents.

COUNSEL

Weissmann Wolff Bergman Coleman Grodin & Evall, Michael Bergman, Marvin Gelfand, Steven Glaser; Holland & Knight, Robert H. Lang, Shelley G. Hurwitz and Tara L. Cooper for Defendants, Cross-complainants and Appellants and for Cross-complainants and Appellants.

Levy, Small & Lallas, Tom Lallas, Mark D. Hurwitz; Katten Muchin Rosenman, Alan D. Croll and Joel R. Weiner for Plaintiff, Cross-defendant and Respondent.

Levy, Small & Lallas, Tom Lallas and Mark D. Hurwitz for Cross-defendants and Respondents John Crosson, Albert J. Crosson, Karen Crosson Lutz, Timothy J. Crosson and Harry Glassman.

Gordon & Rees, Roger M. Mansukhani, Debra Ellwood Meppen and Anthony J. Bellone for Cross-defendants and Respondents John Markham, Markham & Read, C. Read McLean and Emmart Accounting Services, LLC.

**OPINION**

**JOHNSON, J.**—Ronald Weinstock appeals from the trial court's order granting a preliminary injunction in favor of NewLife Sciences, LLC (NLS), prohibiting Weinstock and other persons and entities from engaging in direct or indirect competition with NLS. We affirm.

## BACKGROUND

I.  *First amended complaint and cross-complaint*

NLS filed a first amended complaint against Weinstock[1] alleging that as its primary business, NLS manufactures, markets, and leases to physicians a pain relief device or machine called a therapeutic magnetic resonance device, or TMR. The Food and Drug Administration (FDA) had cleared the use of the device for certain medical purposes after NLS had acquired all the rights to the TMR; the use of the device without the supervision of a physician violated FDA rules.

Weinstock, the purported inventor of the device, obtained three patents related to the device and had another patent pending. Weinstock transferred the patent rights to Medico Enterprises, Inc. (Medico). On December 15, 2006, Weinstock, on behalf of himself and NLS, entered into a memorandum of understanding (MOU) with John Crosson. The MOU provided that Weinstock would assign the TMR patents to NLS. In exchange, Crosson agreed to lend NLS $250,000, and if he decided to invest additional money after a due diligence investigation, Crosson would receive an ownership interest in NLS. Weinstock transferred Medico's interest in the patents to NLS, and in return Weinstock received a 30 percent membership interest in NLS.

---

[1] The complaint also named as a defendant Weinstock's wife, Susan Svatik.

Malta Resources, LLC, a business owned and controlled by Weinstock which operated a TMR clinic in Beverly Hills, California, transferred its rights to the TMR business and goodwill to NLS in an agreement dated December 28, 2006.[2]

Crosson subsequently invested an additional $1.25 million in NLS. NLS, Weinstock, Medico, and Malta entered into an amended and restated operating agreement (Operating Agreement) effective March 1, 2007, to replace an earlier agreement adopted on December 15, 2006. Pursuant to the Operating Agreement, the members of NLS were Weinstock, Crosson, C. Read McLean, John Markham III, the Crosson family trust, Malta, and Medico.[3] NLS's managers were Weinstock, Crosson, and McLean; its officers were Crosson (chief executive officer and president) and McLean.

Also effective March 1, 2007, and as provided for in the Operating Agreement, Crosson and Weinstock each entered into an employment contract with NLS. Weinstock's employment agreement provided that he would serve as NLS's chief officer of science and technology and board chairman for an initial period of five years, at a salary of $22,000 per month. As consideration, Weinstock agreed to transfer all TMR assets to NLS. Weinstock could be terminated for cause, including "conduct by Weinstock that is fraudulent or unlawful," in which case he would forfeit his board position.

Weinstock's employment contract also provided that during his employment Weinstock would not engage in any activity for any other company which competed directly or indirectly with NLS. Further, the employment contract provided: "Weinstock shall not, during or for a period of five years after termination of this contract (whether for cause or otherwise), accept any other employment, service or consulting contract, or perform any work for any other company, endeavor, or individual which competes directly or indirectly with any activity now or in the future engaged in by NLS, unless NLS agrees in writing to allow Weinstock to do so earlier. Weinstock agrees to submit to the jurisdiction of any state or federal court in Los Angeles County, California having jurisdiction over the matter if NLS seeks injunctive relief to enforce this provision . . . ." (the noncompete clause).[4]

---

[2] Weinstock initially owned 100 percent of Medico, Malta, and NLS, and Weinstock, Medico, and Malta initially were the only members of NLS.

[3] NLS rescinded the Medico agreement and cancelled Medico's membership interest on September 24, 2008, on the ground that the patents Medico transferred to NLS did not cover the TMR devices that NLS acquired from Malta.

[4] A similar covenant not to compete appeared in Crosson's employment contract.

NLS's complaint alleged that Weinstock maintained possession of TMR devices and technology belonging to NLS, and administered TMR services to patients. On December 14, 2007, NLS terminated Weinstock's employment for cause, including Weinstock's administering of TMR services outside the presence of a physician, in violation of California law, FDA rules, and NLS policies. NLS demanded that Weinstock return NLS property, but Weinstock refused. The complaint continued: "[NLS] has been informed that (a) after his termination on December 14, 2007, and as recently as January 26, 2008, Weinstock has administered TMRD treatments using one or more of [NLS]'s TMRD machines, and (b) Weinstock has sought to obtain devices for his use in continuing to administer TMRD treatments. . . . [¶] [NLS] has been informed and believes that Weinstock (a) has also falsely told others that he owns the rights to the TMRD and is free to use the TMRD, (b) has disparaged [NLS], its officers and agents, and (c) has otherwise engaged in a series of actions with the intent to interrupt and thus damage the business of [NLS] by attempting to cause people and entities not to deal with [NLS]."

The complaint alleged causes of action for claim and delivery, breach of contract, conversion, unjust enrichment, fraudulent transfer, fraud, misappropriation of trade secrets, breach of fiduciary duty, and injunctive relief, including an injunction to enforce the noncompete clause.

Weinstock filed a motion to strike from the complaint the allegations regarding the noncompete clause, arguing that the clause was void and unenforceable under California law, and was not saved by a statutory exception applicable to a noncompete agreement executed upon the dissolution of an individual's interest in a limited liability company.[5] In opposition, NLS argued that the noncompete clause was enforceable under Business and Professions Code section 16601,[6] as it was executed by Weinstock as part of the transfer of Malta's assets and goodwill to NLS. The trial court denied the motion to strike "on the grounds set forth in the opposition papers."

Weinstock, Malta, Medico, and Svatik filed a first amended cross-complaint against NLS, Crosson, and other individuals, contending (among other causes of action) that the cross-defendants breached the Operating Agreement, breached Weinstock's employment contract, and breached their fiduciary duties by diluting Weinstock's, Malta's, and Medico's interests in NLS.

---

[5] The exception is codified in Business and Professions Code section 16602.5.

[6] Unless otherwise indicated, all subsequent statutory references are to the Business and Professions Code.

## II.  *Discovery disputes*

In late July 2008, NLS filed an ex parte motion to set dates for Weinstock's deposition, stating that Weinstock had failed to appear for a deposition set for the first week in July. The trial court ordered Weinstock to appear for his deposition no later than the first week of September 2008, and in a further order extended the deadline to September 26, at Weinstock's request. Weinstock eventually appeared for his deposition on October 13, 2008, but the deposition was adjourned when Weinstock's counsel was called away. NLS issued a notice of continued deposition for February 17, 2009, but Weinstock objected and failed to appear. Weinstock also objected to some written discovery requests by NLS regarding TMR use or other business activities after his termination, arguing in part that he was not required to respond because the noncompete clause was not enforceable.

In April 2009, the trial court issued three separate discovery orders. On April 15, 2009, the court denied NLS's motion to compel Weinstock's deposition, but ordered Weinstock to appear for his deposition between May 18 and 22. On April 22, 2009, the court granted in part NLS's motion to compel documents with production due by May 4, 2009. On April 24, 2009, the court granted in part NLS's motion to compel responses to interrogatories, requiring Weinstock to provide supplemental responses by May 8, 2009, but denied NLS's accompanying motion to deem matters admitted.

Weinstock moved for a protective order, arguing in part that the noncompete clause was void *ab initio* and he was therefore not required to respond to related discovery. On May 4, 2009, the trial court denied Weinstock's request for a stay of its discovery orders and set a hearing for May 15, 2009. Weinstock did not produce the documents or provide supplemental responses by the deadlines in the discovery orders. On May 8, 2009, NLS filed a motion for terminating sanctions against Weinstock for failure to comply with discovery orders. The trial court set the motion for terminating sanctions to be heard concurrently with Weinstock's motion for a protective order. The trial court denied the motion for protective order on May 15, 2009, continued the hearing on NLS's motion for terminating sanctions, and continued Weinstock's deposition to the week commencing June 8, 2009. Weinstock filed another motion for a protective order, arguing "much of the discovery at issue cannot be obtained unless and until NLS obtains an adjudication that the covenant not to compete i[s] enforceable."

## III.  *Issue sanctions*

On June 8, 2009, the trial court entered an order denying NLS's motion for terminating sanctions. The court stated: "The less drastic award of issue

sanctions will better serve the objects of discovery and is more appropriate in these circumstances. Accordingly, the court orders that the following issues will be deemed established for all purposes in this litigation and any jury will be so instructed: (1) defendant and cross-complainant Ronald Weinstock ('Weinstock') knowingly breached his employment contract with NLS, on and after March 1, 2007, as alleged in the complaint, including, without limitation, the non-competition provision in that contract, and engaged in unfair competition, by soliciting persons and entities known by him, as a result of his employment by NLS, to be actual customers and vendors of NLS as well as persons and entities who were potential customers and vendors of NLS, thereby engaging in direct competition with NLS in the nationwide market, (2) that Weinstock's employment agreement with NLS, including, without limitation, its non-competition provision, is enforceable, (3) that Weinstock utilized the TMRD machine in doing so, (4) that in doing so, Weinstock has utilized the TMRD machine without the proper supervision of a physician, and (5) as a direct result of Weinstock's breach of his employment contract and his unfair competition, NLS suffered damages. . . . [¶] The court adopts this issue sanction because the court finds that the discovery ordered by the court which Weinstock has failed to make was relevant to [NLS's] breach of contract cause of action and its unfair competition cause of action. [¶] . . . On reflection, the court finds it appropriate, in light of Weinstock's continued violation of the court's discovery orders that the issue sanction expressly include that the employment contract between Weinstock and NLS, including the non-competition provision, is enforceable." As a result, there would be no trial regarding the enforceability of the noncompete clause.

The court provided that the June 8, 2009 order would become effective on June 29, 2009, unless Weinstock produced documents and responded to interrogatories before that date. Weinstock did not do so.

After Weinstock failed to appear for his deposition, reset for June 9, 2009, NLS filed another motion for terminating sanctions. In a June 17, 2009 order, the court concluded "Weinstock has violated numerous court orders regarding his discovery obligations," showing "an arrogant and contemptuous disregard for the orders of this court." Although the court concluded "there is more than enough factual and legal basis for granting terminating sanctions," the order gave Weinstock one last opportunity to appear for a deposition on July 20, 2009. Weinstock appeared for the deposition but refused to answer nearly 400 questions.

IV.  *Preliminary injunction*

On December 10, 2009, NLS filed a motion for preliminary injunction against Weinstock, relying on the issue sanctions and the noncompete clause.

The motion included evidence in the form of declarations that after his termination, Weinstock had competed with NLS by soliciting TMR business, was administering TMR treatments, some without physician supervision, was soliciting potential investors for his posttermination business, and (in a declaration filed with an amended notice of motion) used a December 9, 2009 episode of the FX cable network series *Nip/Tuck* to depict himself as the inventor of the TMR device. The declarations also stated that Weinstock's competitive conduct impaired NLS's efforts to locate new investors and raise investment capital. In opposition, Weinstock argued that the noncompete clause was void under section 16600 and that the issue sanctions order was invalid.[7]

On January 21, 2010, the trial court held a hearing on the motion for a preliminary injunction, having provided the parties with a written tentative ruling. The court's minute order adopted its tentative ruling, and stated, "[T]he issues set forth in the June 8, 2009 minute order [(the issue sanctions)] were and are deemed established for all purpose[s] in this litigation, including this motion for preliminary injunction. . . . [¶] . . . [¶] . . . Here, in light of the issues deemed established for all purposes pursuant to the court's order of June 8, 2009, plaintiff has met its burden of demonstrating a reasonable probability of prevailing on the merits." The court noted that if the plaintiff makes a strong showing of likelihood of success on the merits, the judge has the discretion to issue the injunction even if the plaintiff has not shown that the balance of harm tips in its favor. Although Weinstock would suffer somewhat greater harm if the preliminary injunction were issued than NLS would suffer if the injunction were not issued, the court concluded: "[T]he court finds that the likelihood that the plaintiff will ultimately prevail in the litigation [is] sufficiently great that it substantially reduces the severity of the harm the plaintiff must show to prevail on the motion. [Citation.] Thus, the court will exercise its discretion to grant the injunction."

An order filed January 25, 2010, entered a preliminary injunction providing as follows: "IT IS HEREBY ORDERED that during the pendency of this action, Weinstock and his agents, servants, employees, and all persons and entities in active concert and participation with him (including without

---

[7] Weinstock argued that he relied on a "ruling" reflected in the transcript of a hearing on February 20, 2008, on NLS's ex parte application for a temporary restraining order (less than a week after the original complaint was filed) in which a different judge stated that the noncompete clause was unenforceable and "void as a matter of public policy unless you show me otherwise," but also acknowledged "I . . . could be totally wrong on that, but that's what happens in an ex parte proceeding" and "[m]aybe you will prevail at trial on a noncompetition clause," as well as "[n]othing I do in this court is on the merits of the case."

limitation Malta, Medico, Svatik, WOW[8] and any agents, servants, or employees of any of them or of the Weinstock Group), are hereby enjoined and restrained from engaging, directly or indirectly, in any activity in competition with NLS, including without limitation (a) the provision or marketing of 'TMR' devices or services, (b) solicitation of new, potential or existing customers of TMR treatments or devices, or (c) manufacturing TMR devices or similar devices intended for use in providing pain relief treatments."

## V. *Terminating sanctions*

NLS filed a motion for terminating sanctions on January 19, 2010. On February 5, 2010, the trial court granted the motion, striking Weinstock's answer and entering Weinstock's default to the first amended complaint, and dismissing with prejudice Weinstock's first amended cross-complaint. The court found that Weinstock "willfully and consistently failed to make discovery," including Weinstock's continued refusal at his deposition on January 27 and 28 to answer questions the court had ordered him to answer in response to NLS's motion to compel. The court later denied Weinstock's motion for a stay of the preliminary injunction pending appeal.

Weinstock, Malta, Medico, Svatik and WOW filed a timely notice of appeal and, four days later, filed a petition for writ of supersedeas seeking a stay of enforcement of the preliminary injunction, which this court denied on April 8, 2010.[9]

## DISCUSSION

Weinstock contends that the trial court erred when it issued the preliminary injunction in reliance on the issue sanctions. He also argues that the issue sanctions exceeded the court's authority and were excessive. Finally, Weinstock argues that the preliminary injunction was overbroad.

---

[8] NLS substituted WOW! Scientific LLC (WOW), formed by Weinstock after the litigation commenced, in place of a Doe defendant on December 7, 2009. NLS states that as to Svatik, named as a defendant in NLS's first amended complaint, the trial court struck Svatik's claims from Weinstock's cross-complaint in February 2009, and granted Svatik's motion for summary judgment in October 2010.

[9] Weinstock also filed a writ petition seeking relief from the discovery orders, which was summarily denied as premature (*Weinstock v. Superior Court* (May 26, 2009, B216070)), as well as a similar writ petition after the sanctions orders were issued, which was summarily denied (*Weinstock v. Superior Court* (July 2, 2009, B217091)).

■ "[A]n order granting a preliminary injunction is immediately and separately appealable." (*Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.* (2010) 190 Cal.App.4th 1502, 1520 [119 Cal.Rptr.3d 529]; see Code Civ. Proc., § 904.1, subd. (a)(6).) ■ "In deciding whether to issue a preliminary injunction, a court must weigh two 'interrelated' factors: (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction. [Citation.] . . . [¶] The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction. [Citation.] Of course, '[t]he scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits.' [Citation.]" (*Butt v. State of California* (1992) 4 Cal.4th 668, 677–678 [15 Cal.Rptr.2d 480, 842 P.2d 1240].)

As to the court's weighing of the likely injury and the likelihood of success, "[a]ppellate review is limited to whether the trial court's decision was an abuse of discretion. [Citation.]" (*Butt v. State of California, supra,* 4 Cal.4th at p. 678; see *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408 [58 Cal.Rptr.3d 527].) "The party challenging the superior court's order has the burden of making a clear showing of such an abuse." (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739 [106 Cal.Rptr.3d 318].) We do not, however, "decide, as on appeal from a final judgment, whether plaintiffs were entitled to the relief they received. [¶] . . . The abuse-of-discretion standard acknowledges that the propriety of preliminary relief turns upon difficult estimates and predictions from a record which is necessarily truncated and incomplete. . . . The evidence on which the trial court was forced to act may thus be significantly different from that which would be available after a trial on the merits." (*Butt v. State of California, supra,* 4 Cal.4th at p. 678, fn. 8.)

I. *The trial court did not abuse its discretion in granting the preliminary injunction based on the issue sanctions.*

■ "Misuse of the discovery process may result in the imposition of a variety of sanctions. These include . . . sanctions deeming that certain issues are determined against the offending party . . . ." (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1214 [45 Cal.Rptr.3d 265].) Code of Civil Procedure section 2023.030, subdivision (b) provides that after notice and opportunity for hearing, "[t]he court may impose an issue sanction ordering that designated facts shall be taken as established in the action in accordance with the claim of the party adversely affected by the misuse of the discovery

process. . . ." "Misuse of the discovery process includes failing to respond or submit to authorized discovery, providing evasive discovery responses, disobeying a court order to provide discovery, [and] unsuccessfully making or opposing discovery motions without substantial justification . . . ." (*Karlsson v. Ford Motor Co., supra*, 140 Cal.App.4th at p. 1214; see Code Civ. Proc., § 2023.010, subds. (d)–(h).)

Weinstock argues that the court erred in relying on the issue sanctions rather than holding a hearing to determine, without regard to the sanctions, whether the noncompete agreement was enforceable. He argues that had the court not granted the issue sanctions, it would have determined that the noncompete clause was invalid and unenforceable and would have found that NLS did not demonstrate a probability of success on the merits. Essentially, Weinstock argues that the court should have ignored the issue sanctions and determined the issues anew. This misunderstands the nature of issue sanctions. Such sanctions for discovery abuse may be proper even when inconsistent evidence is available, leaving the jury with a misimpression as to actual facts, because the sanctions "effectively remov[e] from the jury's consideration evidence favorable to the offending party's position, or . . . deem[] issues in favor of the aggrieved party even though the offending party has strong evidence to the contrary. Such is the natural consequence of serious discovery violations." (*Karlsson v. Ford Motor Co., supra*, 140 Cal.App.4th at 1220, fn. 11.) The court did not abuse its discretion in relying on the issue sanctions in granting the preliminary injunction.

■ The issue sanctions established that Weinstock knowingly breached his employment contract, including the noncompete clause, and engaged in unfair competition; that the employment contract and the noncompete clause were enforceable; that Weinstock used the TMR machine in doing so, and without the proper supervision of a physician; and that NLS suffered damages. These issues having been deemed determined against Weinstock, the court was entitled to consider them in determining NLS's likelihood of success. Given that the determined issues virtually assured that NLS would prevail at trial, there was a very strong showing of likelihood of success on its claim that Weinstock had violated the enforceable noncompete clause and had used the TMR device in doing so, to the detriment of NLS.

"[A] trial court may grant a preliminary injunction upon a sufficiently strong showing of likelihood of success even when the party seeking the injunction cannot show that the balance of harm[] 'tips' in its favor [citation] . . . ." (*White v. Davis* (2003) 30 Cal.4th 528, 561 [133 Cal.Rptr.2d 648,

68 P.3d 74].) Nevertheless, even when a party shows a sufficiently strong likelihood of success on the merits, the trial court must consider the relative balance of hardships, and "when the balance of hardships dramatically favors the denial," the court may abuse its discretion in granting a preliminary injunction. (*Ibid.*) In this case, the trial court considered the balance of hardships, and concluded that Weinstock would suffer only "somewhat greater" hardship. Weinstock has not shown that the trial court abused its discretion in concluding that the likelihood that NLS would prevail was strong enough to justify the issuance of the injunction, even given that the balance of hardships tipped in Weinstock's favor. (See *Butt v. State of California, supra,* 4 Cal.4th at p. 678.)

II. *Weinstock's challenge to the issue sanctions on the merits is premature.*

Weinstock also challenges the issue sanctions as contrary to law and excessive. As he did in the trial court, Weinstock argues that the noncompete clause is unenforceable under section 16600, which provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." NLS's contrary position in the trial court and on appeal is that the noncompete clause is valid and enforceable under an exception in section 16601, which provides that any person selling the goodwill of a business, or any owner of a business selling all of his or her ownership interest in a business, or substantially all of its operating assets together with the business's goodwill, "may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold, or that of the business entity, . . . has been carried on, so long as the buyer . . . carries on a like business therein." "Where a covenant not to compete is executed as an adjunct of a sale of a business there is an inference that the business had a 'goodwill' and that it was transferred." (*Monogram Industries, Inc. v. Sar Industries, Inc.* (1976) 64 Cal.App.3d 692, 701 [134 Cal.Rptr. 714].)

NLS argues that Weinstock, as a member of Malta, a limited liability company, was an "owner of a business entity," so that the noncompete clause was valid as part of the sale of Malta's business and goodwill to NLS. Weinstock rejoins that the noncompete clause was effective March 1, 2007, while Malta was transferred to NLS in December 2006, so that the noncompete clause was not part of the sale.

The issue sanctions determined that "Weinstock's employment agreement with NLS, including, without limitation, its non-competition provision, is enforceable." Thus, the trial court resolved this issue against Weinstock's argument that the noncompete clause was not part of the transfer of a

business and its goodwill. Weinstock asks us to make a factual determination regarding the provenance of the noncompete clause, and to reach a result contrary to the issue sanctions imposed by the trial court by declaring that the noncompete clause is unenforceable. This we decline to do. Weinstock's challenge to the issue sanctions is premature. An order granting a request for discovery sanctions "is not appealable and the losing party should ordinarily await entry of the order of dismissal to file notice of appeal." (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 264 [26 Cal.Rptr.3d 831]; see *Southern Pacific Co. v. Oppenheimer* (1960) 54 Cal.2d 784, 786 [8 Cal.Rptr. 657, 356 P.2d 441] [although the final determination of some collateral matters are appealable, "it is firmly established that orders relating to inspection and discovery are not appealable"].) Only part of the case (Weinstock's cross-complaint) has been dismissed, and Weinstock's notice of appeal challenges only the order issuing the preliminary injunction. We therefore do not address the merits of the issue sanctions on this appeal from an order issuing a preliminary injunction which, like the issue sanctions, remains in effect during the pendency of the action.[10]

The noncompete provision in Weinstock's employment contract prohibits him from any activity "which competes directly or indirectly with any activity now or in the future engaged in by NLS," with no geographic restriction. The issue sanctions state that Weinstock breached the noncompete clause in his employment contract with NLS by "engaging in direct competition with NLS in the nationwide market." The preliminary injunction also contains no geographic restriction, ordering that Weinstock is "enjoined and restrained from engaging, directly or indirectly, in any activity in competition with NLS." Weinstock argues that the noncompetition clause is void because it is not restricted to the area in which Malta did business; therefore, he argues, the issue sanctions were improper and the scope of the preliminary injunction was too wide.[11]

---

[10] We note that Weinstock misapprehends the nature of appellate review of discovery sanctions, which is for abuse of discretion. (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1123 [52 Cal.Rptr.3d 185].) Courts are authorized to exercise their discretion to award discovery sanctions for abuse of the discovery process. (Code Civ. Proc., §§ 2023.010, 2023.030.) Sanctions should be designed to remedy discovery abuses, but should not put the party seeking the sanctions in a better position than he or she would have been in, had the requested discovery been provided. (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1223 [84 Cal.Rptr.3d 813].) As long as the court exercises its discretion consistently with that principle, the sanctions are proper even if their conclusions are inconsistent with other evidence at trial. (*Karlsson v. Ford Motor Co., supra*, 140 Cal.App.4th at p. 1220, fn. 11.)

[11] "[S]ection 16601 limits the geographic scope of a noncompetition covenant to the area where the sold company carried on business." (*Strategix, Ltd. v. Infocrossing West, Inc.* (2006) 142 Cal.App.4th 1068, 1073 [48 Cal.Rptr.3d 614].) Section 16601 allows a noncompete clause in connection with a sale of a business "to prevent the seller from depriving the buyer of the full value of its acquisition, including the sold company's goodwill. [Citation.] . . . The sold business's goodwill is the ' " 'expectation of . . . that patronage which has become an asset of

Once again, Weinstock argues that the noncompete clause is unenforceable (because of its geographic scope), in direct contradiction to the issue sanctions, which state that the noncompete clause is enforceable. As we stated above, we do not address the merits of the issue sanctions on this appeal from the order granting a preliminary injunction.

III. *The preliminary injunction is not overbroad.*

█ Weinstock argues that the preliminary injunction impermissibly enjoins Malta, Medico, Svatik, and WOW, although they were not subject to the issue sanctions or parties to the noncompete clause. " 'In matters of injunction, however, it has been a common practice to make the injunction run also to classes of persons through whom the enjoined party may act, such as agents, servants, employees, aiders, abettors, etc., though not parties to the action, and this practice has always been upheld by the courts . . . .' " (*People ex rel. Totten v. Colonia Chiques* (2007) 156 Cal.App.4th 31, 42 [67 Cal.Rptr.3d 70].) "We recognize that the direction of injunctive orders to persons 'in active concert or in participation with' specifically named parties defendant is approved by long-standing custom and practice, and we agree that an ascertainable class of persons is described by such language." (*In re Berry* (1968) 68 Cal.2d 137, 155–156 [65 Cal.Rptr. 273, 436 P.2d 273], fn. omitted.) The preliminary injunction properly includes Malta, Medico, Svatik, and WOW as "persons and entities in active concert and participation with" Weinstock.

Weinstock also argues that the preliminary injunction is overbroad because it enjoins him from soliciting "new, *potential* or existing customers of [NLS]." (Italics added.) That language, however, is reasonably construed to enjoin Weinstock from competing with NLS with regard to potential NLS customers of which he is aware, during the pendency of this litigation. Finally, Weinstock argues that the prohibition on "manufacturing TMR devices or *similar devices intended for use in providing pain relief treatments*" (italics added) could mean almost anything, such as Tylenol or magnetic devices not related to pain management. That is not a reasonable interpretation, as the language provides that the devices Weinstock is enjoined from manufacturing must be similar to the TMR devices and intended for use in managing pain.

the business.' " ' [Citation.] The geographic scope of a noncompetition covenant must be limited to the area where the sold company carried on business because '[o]therwise, a seller could be barred from engaging in its business in places where it poses little threat of undercutting the company it sold to the buyer.' [Citation.]" (*Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1301 [72 Cal.Rptr.3d 259].) "The permissible scope of the covenant is thus tied to *the sold business*." (*Strategix, Ltd. v. Infocrossing West, Inc., supra*, 142 Cal.App.4th at p. 1071.)

## DISPOSITION

The order issuing the preliminary injunction is affirmed. Costs are to be awarded to respondent.

Chaney, J., concurred.

**MALLANO, P. J.,** Dissenting.—I would reverse because the trial court failed to rule whether the employment contract between NewLife Sciences, LLC, and Ronald Weinstock was void under Business and Professions Code section 16600, which provides that, "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Rather, the trial court ruled that the contract, including the noncompetition clause, was enforceable as an issue sanction and never determined whether the provision was void or not.

NewLife Sciences claims that the noncompetition clause was lawful because it was part and parcel of the sale by Weinstock of the assets and goodwill of a business and thus enforceable under Business and Professions Code section 16601. That may turn out to be the case, but the trial court never decided the issue based on the evidence presented by NewLife Sciences, relying instead on a discovery sanction imposed on Weinstock.

"[O]ur courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility. . . . The law protects Californians and ensures 'that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.' . . . It protects 'the important legal right of persons to engage in businesses and occupations of their choosing.' " (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 946 [81 Cal.Rptr.3d 282, 189 P.3d 285], citations omitted.)

Plain and simple, I do not think that a noncompetition clause void under California law can be enforced as an issue sanction. If that were permitted, contracts void under other laws—those prohibiting usury (Cal. Const., art. XV, § 1), illegal discrimination (Civ. Code, § 51.5), the release of a claim of unpaid wages (Lab. Code, § 206.5), or a waiver of rights under the Consumers Legal Remedies Act (Civ. Code, § 1751)—could be enforced by the courts as a discovery sanction. The courts should have no part in doing so.

Our courts must make the determination whether a contract is void apart from an issue sanction to protect those who might suffer enforcement against them of a contract void under California's public policy. Accordingly, I would reverse and send the matter back to the trial court to determine whether the employment contract is void or enforceable.

A petition for a rehearing was denied August 3, 2011.