Filed 9/29/23  Wasserbauer v. Theradome CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SARA WASSERBAUER,<br><br>          Plaintiff and Respondent,<br>v.<br><br>THERADOME, INC. et al.,<br><br>          Defendants and Appellants. | A164748<br><br>(Alameda County<br>Super. Ct. No. RG-19-035893) |

Theradome, Inc. (Theradome) and Tamim Hamid (defendants) appeal from the November 2021 default judgment entered in favor of plaintiff Sara Wasserbauer (plaintiff) and the March 2022 order denying defendants' motion to set aside the default judgment under Code of Civil Procedure section 473, subdivision (b) (section 473(b)).[1]  Because defendants satisfied the requirements for application of section 473(b)'s mandatory provision, we reverse.

BACKGROUND[2]

Plaintiff is a medical doctor with a specialization in hair transplants and restoration.  Defendant Theradome produces and sells a product called

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

[2] Because this is an appeal from a default judgment, portions of this background are based on the allegations in the operative complaint.

1

the Theradome LH, which is a helmet that delivers a hair growth treatment known as laser phototherapy. Defendant Tamim Hamid is Theradome's sole officer and shareholder.

In September 2013, plaintiff and Theradome entered into a memorandum of understanding (MOU). Under the MOU, plaintiff agreed to make promotional appearances and allowed Theradome to include plaintiff in videos and photographs used to promote the Theradome LH, in exchange for a percentage of Theradome's net profit. By October 2015, plaintiff had not received the quarterly statements and payments required by the MOU, and she requested an accounting. Instead, defendant Hamid sent plaintiff an e-mail purporting to terminate the MOU.

In December 2018, plaintiff discovered that Theradome was continuing to use her name and likeness to promote the Theradome LH, despite termination of the MOU. The present action was filed in September 2019, and, in December, plaintiff filed her first amended and operative complaint (FAC). The FAC alleges defendants failed to provide plaintiff the royalty payments required under the MOU, and failed to provide an accounting. The FAC alleges eight causes of action, including a claim for violation of plaintiff's right of publicity, which includes a request for attorney's fees. Defendants filed an answer in March 2020.

In January 2020, plaintiff served on defendants a first set of requests for production of documents (Requests). Certain of the Requests sought documents relevant to plaintiff's damages, including financial records necessary to account for royalties. In February, defendants responded with only objections to the Requests relating to royalties, aside from producing two 2016 royalty checks payable to plaintiff. In May 2020, defendants produced

two single-page documents purporting to be royalty statements for the 2016 checks.

In July 2020, plaintiff filed a motion to compel further responses to the to the Requests relating to royalties. After initially opposing the motion, defendants' former attorney, Stephen Crump, filed a "Notice of Non-Opposition to Plaintiff's Motion to Compel." Following an October hearing, the trial court directed defendants to provide a further response and ordered payment of sanctions to plaintiff in the amount of $6,010.

Defendants failed to produce additional documents responsive to the Requests relating to royalties. In November 2020, plaintiff filed a motion for terminating sanctions. A hearing on the motion was scheduled for January 13, 2021. Defendants did not file an opposition. Instead, on January 7, Mr. Crump signed on behalf of defendants a stipulation agreeing, among other things, to produce the responsive documents by January 26 and to pay an additional $19,135 in sanctions by January 22. The sanctions motion hearing was continued to February 17.

On January 26, 2021, defendants produced an additional two-page spreadsheet, purporting to be a summary of Theradome's financials through June 2019. On February 9, plaintiff deposed defendant Hamid as Theradome's person most knowledgeable. Plaintiff's counsel asked Mr. Hamid about the discovery sanctions and Mr. Hamid claimed he was unaware of them. Mr. Hamid admitted he had produced only income statements even though plaintiff requested source documents; he expressed willingness to produce additional documents. Subsequently, Theradome paid

3

the $19,135 monetary sanction and produced an additional document, another spreadsheet.[3]

On or around February 15, 2021, the trial court issued a tentative ruling granting plaintiff's motion for terminating sanctions.  On the morning of February 17, the day of the hearing, Mr. Crump attempted to contest the tentative ruling by e-mailing the court and opposing counsel, stating, "Since the Theradome PMK deposition (but prior to this court's tentative), Theradome paid the total sum of the stipulated monetary sanctions.  My client did indeed produce documents created in house to summarize the massive amount of data that is implicated in [p]laintiff's broad requests for essentially all of its financials, and my client indicated at its first deposition that it would do whatever necessary to verify that the financial summaries already produced were indeed correct, in fact agreeing to produce whatever was necessary to be deposed for a second session.  [¶]  On the basis of these new facts, I would contest the court's tentative to strike [d]efendants' answer . . . ."

The trial court denied the request for a contested hearing as untimely.  That same day, the court entered an order granting the motion for terminating sanctions, striking defendants' answer to the FAC, and entering defendants' default.  The court stated that, in light of the inefficacy of the "substantial monetary sanctions" it had previously imposed, it had "no reasonable choice other than to issue an order striking the [a]nswer . . . ."

On November 2, 2021, following a default prove-up hearing, the trial court entered a default judgment against defendants, awarding plaintiff

---

[3] Defendants later averred the payment was made on February 12, 2021.  The check is dated February 17, the same date as the sanctions motion hearing, but a bank e-mail supports a February 12 order placement date.

$287,743.60 in general damages, $200,000 in special damages, $150,000 in attorney's fees (under the publicity rights cause of action), and $4,959.13 in court costs.

In December 2021, defendants, represented by new counsel, filed a motion to vacate the default judgment and reinstate their answer pursuant to section 473(b). The motion was supported by declarations from defendant Hamid and Mr. Crump. Mr. Hamid averred he was unaware of the orders compelling production of documents and he was willing to produce the documents at issue. Mr. Crump averred he failed to inform Mr. Hamid of the orders to produce documents and the sanctions orders, failed to obtain the requested documents from Mr. Hamid, failed to inform Mr. Hamid of the motion for terminating sanctions, and failed to file an opposition to the motion for terminating sanctions.

Plaintiff opposed the motion to vacate the default judgment. She argued that the declarations in support of the motion lacked credibility and that defendants' "discovery abuses" were responsible for entry of the default judgment.

The trial court denied the section 473(b) motion based on its conclusion that the declarations submitted by defendants did not "establish that the default was entered and the default judgment was issued as a result of counsel's failure to advise his client of the subject discovery and the discovery motions filed by [p]laintiff's attorneys." The trial court's order continued, "[T]he Court finds Dr. Hamid's claim that his attorney kept him in the dark about his discovery obligations and the potential consequences of continuing to resist compliance to be incredible. The subject requests for production are straightforward and were drafted in a clear and concise manner. Dr. Hamid testified during his deposition that he was personally involved in the

preparation of documents for production to [p]laintiff's attorney. . . . The Court also concludes that [d]efendants are not entitled to the relief sought because the neglect of attorney Crump did not cause the Court to enter the default and default judgment. Defendants clearly had both time and opportunity to avoid the imposition of terminating sanctions by simply complying with the requests for production of documents prior to February 17, 2021."

The present appeal followed.

## DISCUSSION

"Section 473[(b)] states that a court 'may . . . relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.' Relief under this provision is discretionary. [Citation.] Section 473[(b)] states further that if an application for relief is filed within six months after the entry of judgment, is in proper form, and is accompanied by an attorney's affidavit of fault, the court 'shall . . . vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.' Relief under this provision is mandatory if the conditions are fulfilled. [Citation.] The attorney's mistake, inadvertence, surprise, or neglect need not be reasonable to justify mandatory relief. [Citation.] The purpose of the mandatory relief provision is to relieve the client of the burden caused by the attorney's error, impose a burden on the attorney instead, and avoid additional malpractice litigation." (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 63, fn. omitted (*Matera*).)

6

" ' "[T]he provisions of section 473 . . . are to be liberally construed and sound policy favors the determination of actions on their merits." [Citation.]' [Citation.] '[B]ecause the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default.' " (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 371–372.) "Whether section 473[(b)'s] requirements have been satisfied in any given case is a question we review for substantial evidence where the evidence is disputed and de novo where it is undisputed." (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 437 (*Martin Potts*).)

The main thrust of defendants' argument on appeal is that, because the default resulted from Mr. Crump's failure to oppose the motion for terminating sanctions, the trial court erred in finding Mr. Crump did not cause the default.[4] The contention has merit. Even if defendants flaunted their discovery obligations, it did not necessarily follow that terminating sanctions were appropriate.

At the outset, we note that it is appropriate to seek relief under the mandatory provision of section 473(b) from a default judgment resulting from terminating sanctions. The decision in *Matera*, *supra*, 145 Cal.App.4th 44, is directly on point. There, as in the present case, the court considered "whether [the] defendants are entitled to mandatory relief from the defaults entered by the court after striking defendants' answer as a sanction for failure to comply with a discovery order, and from the resulting default judgment." (*Id.* at pp. 65–66.) The court concluded the statute *did* apply to a

---

[4] That was also the main thrust of the section 473(b) motion below. In describing Mr. Crump's failures, the motion first states, "Former Counsel's Declaration of Fault shows that he failed to oppose Plaintiff's October 1, 2020, terminating sanction motion."

7

default judgment resulting from a discovery sanction. (*Id.* at p. 67; see also *Rodriguez v. Brill* (2015) 234 Cal.App.4th 715, 725 [terminating sanctions based on plaintiff's discovery violations within scope of section 473(b)].) Plaintiff cites no case holding relief under the mandatory provision of section 473(b) is categorically unavailable as to a default judgment resulting from a discovery sanction.[5]

Turning to the terminating sanctions motion, although a trial court has discretion in fashioning discovery sanctions, "the courts have long recognized that the terminating sanction is a drastic penalty and should be used sparingly. [Citation.] A trial court must be cautious when imposing a terminating sanction because the sanction eliminates a party's fundamental right to a trial, thus implicating due process rights. [Citations.] The trial court should select a sanction that is ' " 'tailor[ed] . . . to the harm caused by the withheld discovery.' " ' [Citation.] ' "[S]anctions 'should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.' " ' " (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 604 (*Lopez*); accord, *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992.)

---

[5] Plaintiff cites *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, but that case merely held that the mandatory provision of section 473(b) did not apply to a judgment following a motion for summary judgment. (*English*, at p. 143.) Such a judgment is not a default judgment. (*Matera*, *supra*, 145 Cal.App.4th at p. 65 ["The cases involving an uncontested judgment or a summary judgment, rather than a default, default judgment, or dismissal, . . . are not on point."].)

In the present case, it is undisputed that the Requests at issue related exclusively to damages on plaintiff's claims.[6]  Under section 2023.030, subdivision (b), a "court may impose an issue sanction ordering that designated facts shall be taken as established in the action in accordance with the claim of the party adversely affected by the misuse of the discovery process.  The court may also impose an issue sanction by an order prohibiting any party engaging in the misuse of the discovery process from supporting or opposing designated claims or defenses."  (See also *NewLife Sciences, LLC v. Weinstock* (2011) 197 Cal.App.4th 676, 686–687.)  As defendants argue, the trial court "could have prevented [defendants] from contesting the amount of compensatory damages set forth in the complaint yet still allowed [the parties] to present evidence at trial on the liability issue."  Had Mr. Crump opposed the motion for terminating sanctions and raised the possibility of issue sanctions, it would have been the "reasonable" alternative the trial court lamented it lacked.  It would have been an abuse of discretion for the trial court to deny defendants their right to contest liability by striking the answer instead of imposing issue sanctions.  (See *Lopez, supra*, 246 Cal.App.4th at pp. 605–606 [abuse of discretion for trial court to order terminating sanctions where issue sanctions could have remedied discovery violations]; *McArthur v. Bockman* (1989) 208 Cal.App.3d 1076, 1081 [same].)

Plaintiff disregards the primary thrust of defendants' argument and makes no attempt to dispute the appropriateness or adequacy of issue

_____

[6] The trial court's October 2020 order compelling production states, "The requests sought documents regarding [plaintiff's] compensatory damages, including royalties purportedly due to [p]laintiff from Theradome based on sales figures for Theradome products.  Plaintiff states that the requested documents are needed prior to conducting a deposition of Theradome's person-most-knowledgeable on the issue of damages."

9

sanctions. Instead, plaintiff argues that defendants' "own discovery abuses directly caused the entry of their default." She argues the evidence submitted in opposition to the motion to set aside the default judgment showed, "(1) that [defendants] ignored Crump's advice to comply with [plaintiff]'s Requests; (2) that Hamid personally made the decisions as to which, if any, documents [defendants] would produce; (3) that Hamid made the fully-informed decision not to comply with [plaintiff]'s discovery and the trial court's orders, despite the probable consequences; and (4) that Hamid decided to instead produce only inadmissible spreadsheets purporting to summarize information from source documents that were never produced." For purposes of appeal, we presume the record contains sufficient evidence from which the trial court could make all such inferences. But that evidence fails to address defendants' fundamental argument that Mr. Crump's *failure to oppose the motion for terminating sanctions* led to the trial court's order striking the answer.[7]

We recognize that "[t]he [trial] court's determination of whether the default was caused by the attorney's mistake, inadvertence, surprise, or neglect is in part a credibility determination. [Citation.] 'Credibility is an issue for the fact finder [. . .] we do not reweigh evidence or reassess the credibility of witnesses.' " (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915.) The trial court's order explained in detail why it found "incredible" "Dr. Hamid's claim that his attorney kept him in the dark about his discovery

---

[7] Plaintiff's argument that Mr. Crump's declaration was insufficient because it provided no explanation for his failure to oppose the motion and because his mistakes were "unreasonable" also fails. Section 473(b) requires no explanation for the attorney's failures, and "the mandatory relief provision entitles a party to relief even when his or her attorney's error is inexcusable." (*Martin Potts*, *supra*, 244 Cal.App.4th at pp. 439, 443.)

10

obligations and the potential consequences of continuing to resist compliance." Based on that finding, the court denied the section 473(b) motion "because the declarations of attorney Crump and Dr. Hamid fail to establish that . . . the default judgment was issued as a result of counsel's failure to advise his client of the subject discovery and the discovery motions . . . ."

However, the trial court's order does not find that defendants intentionally failed to oppose the motion for terminating sanctions, and the order does not address whether issue sanctions would have been an appropriate remedy for the discovery violations. Indeed, the order does not at all address defendants' argument that Mr. Crump's failure to oppose the motion led to entry of the default judgment. Accordingly, the trial court's findings do not contradict defendants' showing of causation.[8] (See *Cisneros v. Vueve* (1995) 37 Cal.App.4th 906, 912 [concluding the " 'unless' " clause of section 473(b) "is not a credibility testing device, it is a causation testing device. The statute mandates relief 'unless the court finds that the default . . . was not *in fact caused* by the attorney's mistake, inadvertence' etc."].)

Citing *Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058 (*Jerry's Shell*), plaintiff argues, "A party cannot justly be permitted to seek relief under [s]ection 473(b) for failing to oppose discovery motions."[9] *Jerry's Shell* did not so hold. There, a group of plaintiffs and their attorney

---

[8] Because the trial court's credibility findings are not determinative, we need not and do not consider defendants' argument that the court improperly relied on "extra-record evidence."

[9] The other case cited by plaintiff, *Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, is inapposite because it addressed a motion for discretionary relief based on excusable neglect.

11

repeatedly ignored orders compelling discovery; when a motion for terminating sanctions was filed, the plaintiffs filed no written opposition (although their counsel was present at the hearing). (*Jerry's Shell*, at pp. 1063–1064.) After the trial court ordered terminating sanctions, plaintiffs' counsel stated, " 'I'll have to bring some other sort of motion to get that set aside.' " (*Id.* at p. 1074, fn. 13.) The declaration submitted by counsel in support of a subsequent section 473(b) motion was directly refuted by the defendants, who presented evidence that plaintiffs' counsel was attending hearings on dates she claimed she was hospitalized and that counsel claimed different hospitalization dates in a declaration in another case. (*Jerry's Shell*, at pp. 1064–1066.) The Court of Appeal affirmed denial of relief, stating, "While calling [counsel's] practice a 'strategy' is perhaps too generous a term, there is no question that it resulted in the attorneys having considerable supplemental time to respond to discovery not available to practitioners who follow the rules, while generally risking nothing more severe than an order compelling responses that should have been provided months earlier or an issue sanction on a topic that might never have been proven at trial. When the ultimate sanction of dismissal inevitably reared its head, . . . counsel's obvious plan was to claim attorney fault and revive the claims through a section 473(b) motion for relief." (*Jerry's Shell*, at pp. 1073–1074.)

*Jerry's Shell* stands for the proposition that, "if an attorney deliberately causes his client to incur a default *while intending to later invoke his own 'neglect' to set it aside*, there is in fact no 'neglect' to invoke—nor any mistake, inadvertence, or surprise." (*Standard Microsystems Corp. v. Winbond Electronics Corp.* (2009) 179 Cal.App.4th 868, 906 (*Standard Microsystems*), disapproved on another ground in *Even Zohar Construction & Remodeling,*

12

*Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 843–844 (*Even Zohar*); see also *Martin Potts*, *supra*, 244 Cal.App.4th at p. 439 [similar characterization of *Jerry's Shell*].) That is not what happened in the present case. Here, the trial court did not find the failure to oppose the motion for terminating sanctions was tactical, and plaintiff cites to no evidence supporting any such inference. Indeed, such an inference is contradicted by the evidence that Mr. Crump made an untimely attempt to contest the motion, as well as by the evidence that defendant Theradome paid the $19,135 monetary sanction—Mr. Crump's reference to the payment in his untimely request for a contested hearing suggests the payment was made to demonstrate compliance with the court's orders in hope of avoiding terminating sanctions. Finally, it is important to note that in *Jerry's Shell* issue sanctions would not have been effective: the *plaintiff* was the subject of the sanctions motion and it risked only issue sanctions "on a topic that might never have been proven at trial." (*Jerry's Shell*, *supra*, 134 Cal.App.4th at p. 1073.) In the present case, issue sanctions were an effective alternative " ' " 'tailor[ed] . . . to the harm caused by the withheld discovery.' " ' " (*Lopez*, *supra*, 246 Cal.App.4th at p. 604.)

"Perhaps it will someday occur that a defendant has so little to lose from a default judgment that he is willing to gamble on securing the mere purchase of delay that would come from suffering its entry and then seeking its vacation based upon a trumped-up claim of attorney fault. It is difficult to formulate a credible set of circumstances in which such a strategy would actually make sense, but we cannot rule it out in the abstract. It is sufficient to the present occasion to say that there is no evidence in this record on which to attribute such an intention to defendants or their attorney." (*Standard Microsystems*, *supra*, 179 Cal.App.4th at p. 907; see also

13

*Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1488.)

Because there is no evidence in the record to support a finding that *entry of the default judgment* was not caused by Mr. Crump's neglect, the trial court erred in denying the section 473(b) motion, even if defendants bore some responsibility for the underlying discovery violations.[10]

## DISPOSITION

The 2021 default judgment and the trial court's award of terminating sanctions are vacated. The matter is remanded to the trial court for further proceedings. On plaintiff's request, the court may conduct a hearing to consider imposition of issue sanctions and monetary sanctions, including the determination of compensation due to plaintiff under section 473(b) and potential discretionary penalties under section 473, subdivision (c). The clerk of this court is ordered to forward a copy of this opinion to Mr. Crump and to the California State Bar, for investigation of Mr. Crump's conduct and possible discipline. In the interests of justice, each party shall bear its own costs on appeal.

---

[10] Because we vacate the default judgment, we need not consider defendants' contention the trial court abused its discretion in its award of attorney's fees.

We disagree with plaintiff's contention that granting defendants' section 473(b) motion will reward misconduct. Mr. Crump will be liable for " 'reasonable compensatory legal fees and costs' " as required by section 473(b), and the trial court may impose additional penalties under section 473, subdivision (c). (See also *Even Zohar*, *supra*, 61 Cal.4th at p. 839.) Further, because Mr. Crump's conduct may have amounted to incompetent representation, we will order that a copy of this opinion be forwarded to the California State Bar for investigation and possible discipline. (Bus. & Prof. Code, § 6086.7.) We see little risk attorneys will voluntarily expose themselves to such consequences to delay discovery.

_____
SIMONS, J.

We Concur.


_____
JACKSON, P. J.


_____
CHOU, J.


(A164748)