Filed 10/18/22 Certified for Partial Pub. 11/4/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| GARY R. WISNER, | C094051 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UD-2020-0003078) |
| v. | |
| DIGNITY HEALTH et al., | |
| Defendants and Respondents. | |

This appeal is from an order striking a complaint under Code of Civil Procedure section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute.[1] Plaintiff Gary R. Wisner, M.D., who is representing himself, filed a complaint alleging that defendants Dignity Health and the Dignity Health St. Joseph's Medical Center (collectively, SJMC) falsely reported to the National Practitioner Data Bank (NPDB) that Wisner surrendered his clinical privileges while under investigation.[2]  The trial court

---

[1]    Undesignated statutory references are to the Code of Civil Procedure unless otherwise noted.

[2]    After this matter was fully briefed, we granted the unopposed motion of Wisner's counsel to withdraw as attorneys of record.  Consequently, plaintiff is now proceeding in propria persona.

1

granted a special motion to strike the complaint after concluding that Wisner's claims arose from a protected activity and that Wisner failed to establish a probability of prevailing on the merits. Wisner contests both aspects of the trial court's order, and he also contends the court erred by denying his motion to conduct limited discovery prior to the hearing on the anti-SLAPP motion. Finding no error, we affirm.

BACKGROUND FACTS AND PROCEDURE

Wisner is an orthopedic surgeon who has been practicing since 1988. He holds medical licenses in five states and is certified by the American Board of Orthopedic Surgery. From 1990 through March 2019, Wisner held "courtesy" staff privileges at SJMC, an acute care hospital in Stockton, California. As a courtesy staff member, Wisner could admit up to 10 patients per year at SJMC.

In May 2018, Wisner was charged in a criminal indictment with 11 felony counts of making false or fraudulent insurance claims (Pen. Code, § 550, subd. (a)) related to patient care services. In July 2018, the Medical Board of California ("Medical Board") issued an accusation against Wisner seeking to revoke or suspend his license to practice medicine in California for gross negligence and repeated negligent acts in his care and treatment of multiple patients.

In January 2019, Wisner asked to be placed on SJMC's emergency department "on call panel." At the time, Wisner had not treated any patients at SJMC for approximately two decades.

In response to Wisner's request to join SJMC's on call panel, Don Wiley, SJMC's chief executive officer, conferred with Alvin Cacho, M.D. (Cacho), then chief of staff. Given the length of time since Wisner had last treated patients at SJMC, and the pending accusation and criminal indictment, they concluded that there was a need to "develop additional information" to evaluate Wisner's request. Cacho "began an investigation."

Thereafter, in a series of e-mails and letters, Cacho asked Wisner to provide SJMC with additional information about the accusation and indictment, including a complete

2

copy of any materials that Wisner was "entitled" to obtain from the Medical Board through prehearing discovery (e.g., the Medical Board's investigative report). Cacho explained that SJMC had a responsibility to assess the validity and peer review implications of the charges against Wisner based on an independent review of the relevant evidence. Cacho informed Wisner that compliance was mandatory and that his failure to comply may result in suspension of his clinical privileges. Cacho also told Wisner that after receiving the requested materials, SJMC would determine the implications for Wisner's staff membership and clinical privileges.

Wisner responded that he could not satisfy SJMC's demand to provide more information because he had no additional information to provide. Instead, by e-mail dated March 4, 2019, Wisner "resign[ed] all privileges" at SJMC. In his resignation e-mail, Wisner explained: "I am clearly not under any investigation at [SJMC] . . . since you pointed out repeatedly that you do not even know my activities as a surgeon these last 30 years. I have always had an excellent relationship with all hospitals including [SJMC], and I still remain a member in good standing at all hospitals including your own. To avoid further costly litigation to assert my legal rights both to remain on your medical staff and to protect my excellent medical staff privileges, I would like to completely resign all privileges at [SJMC] at this time."

On March 15, 2019, SJMC filed a report with the NPDB disclosing that Wisner had surrendered his clinical privileges while under investigation. SJMC also reported the resignation to the Medical Board, as required by Business and Professions Code section 805.

In March 2020, Wisner asked the Secretary of the U.S. Department of Health and Human Services (DHHS) to review the accuracy of the NPDB report. Wisner asserted that the NPDB report was false because he was not under investigation.

Wisner also separately filed a complaint against SJMC, accusing the hospital of falsely reporting to the NPDB that Wisner had resigned while under investigation "out of

3

spite and with a retaliatory motive" because of Wisner's repeated requests to be placed on the emergency department on call panel. The complaint alleged claims against SJMC for fraud, libel/defamation, intentional interference with his right to pursue a lawful profession, negligent and intentional interference with prospective economic advantage, unlawful business practices, and intentional infliction of emotional distress.

In June 2020, while the complaint was pending, the Secretary of the DHHS issued a decision rejecting Wisner's challenge to the NPDB report. The Secretary determined that Wisner had surrendered his clinical privileges "while under investigation or to avoid an investigation in a matter which could have led to a reportable professional review action had the investigation been completed." The Secretary found "no basis to conclude that the report should not have been filed or that [the report was] not accurate, complete, timely or relevant."

That same month, SJMC filed a special motion to strike the complaint pursuant to section 425.16 (the anti-SLAPP motion). SJMC argued that the complaint was subject to the anti-SLAPP statute because it arose from protected activity under section 425.16, subdivision (e)(1), (2), and (4), namely, the filing of the NPDB report.

Wisner opposed the anti-SLAPP motion, arguing that the filing of the NPDB report was not protected activity and that he had, in any event, shown a probability of prevailing on the merits. Wisner also filed a motion under section 425.16, subdivision (g) for an order allowing limited discovery to oppose the anti-SLAPP motion (the discovery motion). Wisner sought evidence to prove that the NPDB report was false and that SJMC officials knew it was false and acted with malice in filing the report.

The court denied Wisner's discovery motion, finding that he failed to demonstrate good cause for the requested discovery. The court reached this conclusion for two reasons. First, the proposed discovery did not define the term "investigation," and therefore was vague and ambiguous. Second, under any definition of investigation, the "evidence already in [Wisner's] possession" clearly demonstrated that Wisner was under

4

investigation and therefore the proposed discovery was unnecessary as it would not change the outcome.

The court granted SJMC's anti-SLAPP motion. The court concluded that SJMC carried its burden of demonstrating that Wisner's complaint arose out of protected activity, namely, the filing of the NPDB report. Wisner, in contrast, failed to carry his burden of showing a probability of success on the merits. The court specifically noted that "[a]ll of the evidence before the court supports [SJMC's] contention that the [NPDB] report was true when made—a contention that has been endorsed by [the DHHS]." Thus, SJMC was statutorily immune from liability under section 11137 of the federal Health Care Quality Improvement Act of 1986 (HCQIA). (42 U.S.C. § 11101 et seq.)

Wisner timely appealed the orders granting the anti-SLAPP motion and denying the discovery motion. (§§904.1, subd. (a)(13), 906, 425.16, subd. (i).)

DISCUSSION

I

*Order Granting Anti-SLAPP Motion*

Wisner contends that the trial court erred in granting SJMC's anti-SLAPP motion to strike the complaint because (1) not all of Wisner's claims arose from protected activity to which section 425.16 applies; and (2) the court improperly weighed the evidence and made inferences in favor of SJMC in determining that Wisner failed to demonstrate a probability of success on the merits. We conclude that the first contention was forfeited and that the second contention lacks merit. We explain below.

A.     C*alifornia's anti-SLAPP statute*

Enacted in 1992, California's anti-SLAPP statute is designed to deter "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a); *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883-884.) To that end, the statute provides a special motion procedure for "weeding out, at an early stage, *meritless* claims arising

5

from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*); *Wilson, supra*, at p. 884.)

Resolution of an anti-SLAPP motion involves a two-step procedure. (*Baral, supra*, 1 Cal.5th at p. 384.) At the first step, the moving defendant bears the burden of establishing that the challenged claim "arises from activity protected by section 425.16." (*Baral*, at p. 384; § 425.16, subd. (b)(1).) At this step, "courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*); see also *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 ["arising from" means the claim was "based on" an act in furtherance of the right of petition or free speech].) A moving defendant can meet its burden by demonstrating that the plaintiff's claim arises from one of four categories of protected activity listed in section 425.16, subdivision (e). (*City of Cotati, supra*, at p. 78.)

If the defendant makes the required showing, the burden then shifts to the plaintiff to demonstrate a probability of success on the challenged claims. (*Baral, supra*, 1 Cal.5th at p. 384.) The plaintiff's burden is not high; the plaintiff need only establish that the claims have " 'minimal merit.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) However, the plaintiff cannot meet this burden by relying on the allegations of the complaint. The plaintiff must submit admissible evidence. (*Litinsky v. Kaplan* (2019) 40 Cal.App.5th 970, 980.)

During the second step of the anti-SLAPP analysis, the court evaluates the merits of the plaintiff's claims using a " 'summary-judgment-like procedure.' " (*Baral, supra*, 1 Cal.5th at p. 384.) "The court does not weigh evidence or resolve conflicting factual

6

claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  [The court] accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id*. at pp. 384-385.)  The court must determine whether the plaintiff has presented evidence that, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken.  (*Id*. at p. 396.)  A defendant, in turn, may defeat a claim by showing that the plaintiff cannot establish an element of the claim or that there is a complete defense to it. (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 676; *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 38; see also *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 478, 480 [reversing order denying anti-SLAPP motion where plaintiffs failed to address immunity defense].)

We review an order granting an anti-SLAPP motion de novo, using the same two-step approach as the trial court.  (*Alpha & Omega Development, LP v. Whillock Contracting, Inc*. (2011) 200 Cal.App.4th 656, 663.)  In undertaking our review, we are guided by the legislative directive that section 425.16 be construed broadly to encourage continued participation in speech and petitioning activities.  (§ 425.16, subd. (a); *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 22; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119-1120.)

B.      *First prong:  protected activity*

In moving to strike Wisner's complaint under section 425.16, SJMC had the initial burden of demonstrating that each claim alleged in the complaint arose from protected activity.  (*Bonni, supra*, 11 Cal.5th at p. 1009.)  To meet this burden, SJMC argued that all of Wisner's causes of action arose from the filing of the NPDB report, a protected activity under section 425.16, subdivision (e)(1), (2), and (4) of the anti-SLAPP law.

On appeal, Wisner concedes that filing an NPDB report is a protected activity under the Supreme Court's decision in *Bonni, supra*, 11 Cal.5th at page 1017. However, Wisner disputes that all his claims arose from that protected activity. Wisner argues that the third through seventh causes of action also alleged, as a basis for liability, (1) SJMC's refusal to place him on the emergency department on call panel; (2) the demand that he exercise prehearing discovery rights in the Medical Board administrative proceeding; and (3) the demand that he disclose discovery information relating to the Medical Board accusation. Wisner argues that these claims are unrelated to the filing of the NPDB report, and therefore SJMC failed to meet its burden to show the claims arose from protected activity.

SJMC responds that Wisner forfeited this contention by failing to raise it below. We agree.

In his opposition to the anti-SLAPP motion, Wisner argued that filing an NPDB report is not a protected activity, but Wisner never challenged SJMC's assertion that all his claims arose from the filing of the NPDB report. In other words, Wisner never argued that any of his causes of action were based on other, unprotected activity, raising that argument instead for the first time on appeal. Hence, this argument was not developed before, nor considered or ruled upon by, the trial court.

Generally, issues not raised in the trial court cannot be raised for the first time on appeal. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.) Although appellate courts have discretion to consider an issue in the first instance if it raises a question of law on undisputed facts, our Supreme Court has cautioned that such discretion should be exercised rarely and only in cases presenting an important legal issue. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on unrelated grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962; *In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7; see *Souza v. Westlands Water Dist.* (2006) 135

8

Cal.App.4th 879, 898-899 [there is no rule that an appellate court *must* consider a pure question of law raised for the first time on appeal]; *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872-873 [it would be manifestly unjust to the opposing parties, unfair to the trial court, and contrary to judicial economy to permit a change of theory on appeal].) " ' "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.]" ' " (*Premier Medical Management Systems, supra*, at p. 564, citing *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)

Wisner fails to respond to SJMC's forfeiture argument in his reply brief on appeal, tacitly conceding its merit. Because we find that the circumstances of this case do not support an exception to the forfeiture rule, we decline to consider Wisner's argument that some of his claims arose from unprotected activity.

C.      *Second prong:  probability of success on the merits*

Because SJMC met its initial burden of showing that Wisner's causes of action arose from the protected activity of filing the NPDB report, the burden shifted to Wisner to demonstrate a probability of prevailing on the merits by showing that his claims have " 'at least "minimal merit." ' " (*Bonni, supra*, 11 Cal.5th at p. 1009.) Here, SJMC argued, and the trial court agreed, that Wisner could not meet that burden because the evidence shows defendants are immune from liability under the HCQIA. We agree.

We begin with the language of the relevant statute and regulations, which *mandate* a health care entity to file an NPDB report whenever a physician surrenders clinical privileges while "under investigation." (42 U.S.C. § 11133(a); 45 C.F.R. §§ 60.2, 60.3, 60.4, 60.12(a)(ii)(A); U.S. Dept. of Health and Human Services, NPDB Guidebook, at E-

9

31, E-32, E-36, E-43 (2018) (the NPDB Guidebook).)[3] Information reported to the NPDB is accessible to state licensing boards and certain health care entities. (42 U.S.C. § 11137(a); 45 C.F.R. §§ 60.17, 60.18.)

The HCQIA provides immunity for any person or entity who makes a report to the NPDB, except when the report was knowingly false. (42 U.S.C. § 11137(c).) "Thus, immunity for reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false." (*Brown v. Presbyterian Healthcare Services* (10th Cir. 1996) 101 F.3d 1324, 1334; see also *Bryan v. James E. Holmes Regional Medical Ctr.* (11th Cir. 1994) 33 F.3d 1318, 1332 [HCQIA immunity is a question of law for the court to decide whenever the record is sufficiently developed].)

At issue here is the meaning of the term "investigation" for the purpose of the mandatory reporting requirements. Wisner argues that this is an issue that should be resolved by a jury, but a "reportable event is based on an 'investigation' as that term is contemplated by the statute . . . ." (*Doe v. Rogers* (D.D.C. 2015) 139 F.Supp.3d 120, 142 (*Rogers*).) The proper interpretation of that statutory term presents a question of law for a court to resolve, not a question for a jury. (*Family Health Centers of San Diego v. State Dept. of Health Care Services* (2021) 71 Cal.App.5th 88, 97.)

Under settled canons of statutory construction, in construing a statute we ascertain the legislative intent to effectuate the law's purpose. (*Green v. State of California* (2007) 42 Cal.4th 254, 260; *RCJ Medical Services, Inc. v. Bonta* (2001) 91 Cal.App.4th 986, 1006-1007.) We look first to the statutory language, giving it a plain and commonsense meaning, construed in the context of the overall statutory scheme. (*Green, supra*, at p.

---

**3**    We grant Wisner's request for judicial notice of the NPDB Guidebook, which is available at <https://www.npdb.hrsa.gov/resources/NPDBGuidebook.pdf> [as of Oct. 17, 2022], archived at <https://perma.cc/8BK8-G86P>.

260; *RCJ Medical Services, supra*, at p. 1006.)  Where the words used are sufficient in and of themselves to determine the purpose of the legislation, we follow the plain meaning.  (*People v. Murtha* (1993) 14 Cal.App.4th 1112, 1119-1120.)

Neither the statute nor the implementing regulations define the term "investigation" for the purpose of the mandatory reporting requirements.  (*Rogers, supra*, 139 F.Supp.3d at p. 133.)  However, the Secretary of the DHHS, which administers the HCQIA, has provided guidance in the NPDB Guidebook.  (*Rogers*, at pp. 133-134, fn. 10; *Costa v. Leavitt* (D. Neb. 2006) 442 F.Supp.2d 754, 769-770.)  The NPDB Guidebook is an agency "policy manual" created by the DHHS to "inform the U.S. health care community and others about the [NPDB] and the requirements established by the laws governing the NPDB . . . ."  (*Costa v. Leavitt, supra*, at p. 769; 42 U.S.C. § 11114.)  With respect to investigations, the NPDB Guidebook provides:  "[The] NPDB interprets the word 'investigation' expansively. . . .  The NPDB considers an investigation to run from the start of an inquiry until a final decision on a clinical privileges action is reached. In other words, an investigation is not limited to a health care entity's gathering of facts or limited to the manner in which the term 'investigation' is defined in a hospital's bylaws.  An investigation begins as soon as the health care entity begins an inquiry and does not end until the health care entity's decision-making authority takes a final action or makes a decision to not further pursue the matter."  (NPDB Guidebook, at E-36-E-37.)

"A routine review of a particular practitioner is *not* an investigation."  "However, if a formal, targeted process is used when issues related to a *specific practitioner's* professional competence or conduct are identified, this *is* considered an investigation for the purposes of reporting to the NPDB.

"A health care entity that submits a clinical privileges action based on surrender, restriction of, or failure to renew a physician's or dentist's privileges while under investigation should have evidence of an ongoing investigation at the time of surrender . . . .  Examples of acceptable evidence may include minutes or excerpts from

11

committee meetings, orders from hospital officials directing an investigation, or notices to practitioners of an investigation (although there is no requirement that the health care practitioner be notified or be aware of the investigation)." (NPDB Guidebook, at E-37.)

The NPDB Guidebook is not the product of formal rulemaking, and therefore is not entitled to the high level of deference outlined in *Chevron, U.S.A., Inc. v. NRDC, Inc.* (1984) 467 U.S. 837, 843-845 [81 L.Ed.2d 694, 703-705] [quasi-legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute]. Nevertheless, we are persuaded that the NPDB Guidebook is entitled to a high level of deference under *Skidmore v. Swift & Co.* (1944) 323 U.S. 134, 140 [89 L.Ed. 124, 129] due to the agency's expertise and technical knowledge, its careful and studied consideration of the issue in a comprehensive manual of general applicability, the value of a uniform understanding of what a national law requires, and the validity of the agency's reasoning in light of the purpose of the reporting requirement. (*Doe v. Leavitt* (1st Cir. 2009) 552 F.3d 75, 79-86; see also *United States v. Mead Corp.* (2001) 533 U.S. 218, 227, 234 [150 L.Ed.2d 292, 304, 308]; *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8, 11-15.)

We find the NPDB Guidebook's interpretation sensible and persuasive given the purpose of the NPDB, which is to improve health care quality, protect the public, and reduce health care fraud and abuse. An expansive interpretation of what constitutes an investigation is necessary to prevent incompetent and unprofessional physicians from eluding the reach of the mandatory reporting requirement by resigning early in the process, before an inquiry can blossom into a formal peer review proceeding.

We agree with the NPDB Guidebook that the definition of an investigation cannot be controlled by a hospital's bylaws, policies, or procedures. "To hold otherwise would result in ad hoc reporting and reporting inconsistencies across the multitude of health care entities throughout the nation," frustrating the purpose of the reporting requirement. (*Rogers, supra*, 139 F.Supp.3d at p. 142; *Doe v. Leavitt, supra*, 552 F.3d at pp. 82-85.)

12

We note that the NPDB Guidebook's interpretation also is consistent with the ordinary definition of an investigation as an inquiry or examination of a person or thing. (Oxford English Dict. Online (2022) <https://www.oed.com/view/Entry/99038?redirectedFrom=investigation#eid> [as of Oct. 17, 2022], archived at <https://perma.cc/2PZ9-RLF3>.)

Thus, consistent with the Secretary's interpretation, we conclude that for the purpose of the mandatory reporting requirements, an "investigation" commences as soon as there is a focused "inquiry" into potential misconduct.

Applying this definition, we have little difficulty concluding that the evidence presented established that Wisner was "under investigation" at the time of his resignation. First, both SJMC's chief executive officer and its chief of staff submitted declarations stating that the hospital commenced an investigation into the Medical Board accusation and criminal indictment after Wisner requested to be placed on the emergency department on call panel. The purpose of the inquiry was to investigate the serious allegations of professional misconduct contained in the accusation and criminal indictment.

Second, SJMC requested information from Wisner about the accusation and criminal indictment, and told Wisner that a decision about his staff membership and clinical privileges would be made after that information was received and reviewed. SJMC also explained to Wisner that his compliance was mandatory and that failure to comply may result in suspension of his privileges.

Third, after Wisner disputed the accuracy of the NPDB report, the Secretary of the DHHS specifically determined, based on largely the same evidence as was presented to the court, that Wisner surrendered his clinical privileges "while under investigation or to avoid an investigation . . . ." Wisner did not seek judicial review of that determination.

Wisner argues that under the hospital's bylaws, an "investigation" must be initiated by the hospital's executive committee. Wisner is incorrect. The hospital's

13

bylaws define an investigation as a process ordered by the executive committee, "or by the Chief of Staff on its behalf," to determine the validity of a concern or complaint raised against a practitioner. The bylaws specifically provide, at section 8.1.D, that "[t]he Chief of Staff may act on behalf of the [executive committee] to initiate an Investigation," subject to subsequent review and approval by the committee.[4] In any event, as discussed, the bylaws do not control the meaning of an "investigation" for purposes of the NPDB reporting requirements and associated immunity.

We likewise reject the contention that the NPDB Guidebook requires minutes of committee meetings, orders from hospital officials, or similar evidence to support the existence of an investigation. There must be "evidence that an investigation was initiated prior to the surrender of clinical privileges," but the NPDB Guidebook does not require any particular type of evidence. (*Rogers, supra*, 139 F.Supp.3d at p. 139.) Here, the evidence produced by SJMC was sufficient to show that an investigation was initiated prior to Wisner's surrender of clinical privileges.

Wisner accuses the trial court of improperly weighing the evidence and failing to indulge inferences in his favor. But the only admissible evidence showed that Wisner was under investigation. Wisner presented nothing to contradict this. (*Litinsky v. Kaplan, supra*, 40 Cal.App.5th at p. 983 [trial court not required to disregard defendant's evidence where no conflict existed].) Wisner's self-serving opinion that he did not *believe* he was under investigation was not sufficient for a jury to find the NPDB report was false. (*Industrial Waste & Debris Box Service, Inc. v. Murphy* (2016) 4 Cal.App.5th 1135, 1159 [mere assertion that a statement is false does not satisfy plaintiff's burden to demonstrate its falsity].) It was not necessary for Wisner to have been aware of the investigation. (*Rogers, supra*, 139 F.Supp.3d at p. 147.)

---

**4** SJMC submitted evidence indicating that the executive committee was consulted and approved the investigation.

14

Viewing the facts in the light most favorable to Wisner, we are persuaded there was not sufficient evidence for a reasonable jury to conclude the NPDB report was false. Therefore, the trial court did not err in concluding that SJMC was entitled to immunity, defeating Wisner's claims as a matter of law.

II

*Order Denying Discovery*

Wisner also argues the judgment should be reversed because the trial court abused its discretion by denying his discovery motion. We find no abuse of discretion.

A. *Background law*

As a rule, when an anti-SLAPP motion is filed under section 425.16, all discovery in the action is stayed until the motion is decided. (§ 425.16, subd. (g).) The discovery stay "reflect[s] the statutory purpose to prevent and deter SLAPP suits by ending them early and without great cost to the SLAPP target." (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1124; accord, *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65.) Although the anti-SLAPP statute permits specified discovery on noticed motion "for good cause shown," the exception is construed narrowly. (§ 425.16, subd. (g); *Paterno v. Superior Court* (2008) 163 Cal.App.4th 1342, 1350-1351.)

A plaintiff requesting discovery under the anti-SLAPP statute should include some explanation of " 'what additional facts [plaintiff] expects to uncover,' " and why such discovery is necessary. (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 593 (*1-800 Contacts*); *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 247.) Factors that courts may consider in deciding whether to grant a motion for limited discovery include: (1) whether the discovery is needed to establish the plaintiff's prima facie case and tailored to that end; (2) whether the information plaintiff seeks to obtain through discovery is readily available from other sources or can be obtained through informal discovery; (3) the plaintiff's need for discovery in the context of the issues raised in the anti-SLAPP motion; and (4) the importance of staying discovery as

15

protection for the defendant's valid exercise of the right of petition or free speech. (*The Garment Workers Center v. Superior Court* (2004) 117 Cal.App.4th 1156, 1162-1163; *Britts v. Superior Court, supra*, 145 Cal.App.4th at p. 1125; *Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 891; § 425.16, subd. (a).) A motion for discovery may be denied where the only justification for it is a stated desire to test the opponent's declarations. (*1-800 Contacts, supra*, at p. 593; *Sipple, supra*, at p. 247.)

B.     *Analysis*

In his motion for discovery, Wisner sought to discover a broad range of information related to the issue of whether he was under investigation, including who made the decision to commence an investigation, when the decision was made, the scope of the investigation, and any documents that refer or relate to the investigation. The proposed discovery, which was attached to the motion, consisted of a deposition of Cacho, 20 document requests, nine requests for admission, and eight interrogatories.

Wisner insisted the discovery was necessary to allow him to develop evidence relevant to the issues of whether the NDPB report was false and whether defendants knew it was false. In particular, Wisner claimed he needed discovery to show (1) defendants conducted only a "preliminary inquiry" to determine whether an investigation should be commenced; (2) there was no documentation of a formal investigation; and (3) defendants knew there was no investigation and filed the NPDB report with malice.

The court denied Wisner's discovery motion, finding Wisner failed to demonstrate good cause for the requested discovery. We may not disturb the trial court's ruling denying the discovery motion absent an abuse of discretion. (*1-800 Contacts, supra*, 107 Cal.App.4th at p. 593.) There was no abuse of discretion here.

As the trial court explained, Wisner's showing of good cause was based on his interpretation of the term "investigation." Wisner argued, as he does on appeal, that an investigation requires a formal process initiated and conducted by the hospital's executive committee. However, as we have already discussed, the meaning of the term

16

"investigation" is "not controlled by how that term may be defined in a health care entity's bylaws or policies and procedures."  (See, e.g., *Rogers, supra*, 139 F.Supp.3d at p. 142 [a reportable event is based on an "investigation" as that term is contemplated by the statute, not as contemplated by a health care entity's governing documents].)  For purposes of NPDB reporting, an investigation is broadly construed to run from the start of a focused "inquiry" relating to possible incompetence or improper professional conduct.  To qualify for mandatory reporting, there is no requirement for a formal investigation taken in accordance with the hospital's internal bylaws or policies.  (*Rogers*, at p. 142.)

Here, SJMC presented evidence establishing that Wisner was the subject of a focused "inquiry" regarding the accusations against him.  Wisner's proposed discovery, focusing on whether there was documentation of a formal investigation within the meaning of the bylaws, could not have changed that outcome.

In addition, the record shows that most (if not all) of the information Wisner sought to obtain through discovery was available from other sources (to the extent it existed at all).  After Wisner challenged the accuracy of the NPDB report, the DHHS asked SJMC to provide details and "any supporting documentation, including but not limited to, a timeline of events, investigation reports, meeting minutes, correspondence, an explanation/evidence of a search of historical documents, and any business records that may be relevant to a full and fair review of this dispute."  In response, SJMC produced copies of the accusation, the indictment, SJMC's bylaws, and the communications between SJMC and Wisner, and Wisner received copies of those documents.  Thus, Wisner received whatever supporting documents SJMC had, well

17

before the hearing on the anti-SLAPP motion.[5]  Wisner never explained why the informal discovery he received was not sufficient or what additional evidence he expected to uncover through discovery.  (See *Tutor-Saliba Corp. v. Herrera* (2006) 136 Cal.App.4th 604, 619 [no showing how discovery was likely to lead to admissible evidence relevant to privilege issue].)

Under the circumstances, Wisner failed to establish good cause for the discovery in the context of the issues raised in the anti-SLAPP motion.  The trial court did not abuse its discretion in denying his discovery motion.

## DISPOSITION

The orders granting the special motion to strike the complaint and denying the motion to conduct limited discovery are affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


        KRAUSE        , J.


We concur:


        ROBIE        , Acting P. J.


        HULL        , J.

---

[5]  Indeed, Wisner argued at the hearing that defendants' failure to produce an investigation report, executive committee minutes, formal investigation order, and similar documents, supported an inference that there was no investigation.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| GARY R. WISNER, | C094051 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UD-2020-0003078) |
| v. | |
| DIGNITY HEALTH et al., | ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Barbara A. Kronlund, Judge. Affirmed.

Gary R. Wisner, in pro. per.; The Arkin Law Firm, Sharon J. Arkin; Barta Law, and Theresa J. Barta for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Barry S. Landsberg, Doreen W. Shenfeld, and Joanna S. McCallum for Defendants and Respondents.

1

THE COURT:

The opinion in the above entitled matter filed on October 18, 2022, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, with the exception of part II, and it is so ordered.[6]

BY THE COURT:


_____ROBIE_____, Acting P. J.


_____HULL_____, J.


_____KRAUSE_____, J.

---

[6] See California Rules of Court, rules 8.1105 and 8.1110.